42 A.3d 208 (2012)
425 N.J. Super. 523
STATE of New Jersey, Plaintiff-Respondent,
v.
David M. GIBSON, Defendant-Appellant.
Docket No. A-1513-10T4
Superior Court of New Jersey, Appellate Division.
Submitted April 17, 2012.
Decided May 8, 2012.
*209 Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa Aiello, Assistant Deputy Public Defender, of counsel and on the brief).
Robert D. Bernardi, Burlington County Prosecutor, attorney for respondent (Bethany L. Deal, Assistant Prosecutor, of counsel and on the brief).
Before Judges FISHER, NUGENT and CARCHMAN.
The opinion of the court was delivered by
FISHER, P.J.A.D.
In this appeal, defendant argues, among other things, that the trial judge erred in denying his motion to suppress evidence seized from him following his arrest for defiant trespass. This argument centers on whether, by the time of the search, the arresting officer possessed probable cause that defendant had engaged in a defiant trespassan issue that requires our consideration of whether it mattered that the owner of the property had posted a "no loitering" instead of a "no trespassing" sign. We reject this and defendant's other arguments and affirm.
In indictments returned in 2008 and 2009, defendant was charged with various drug offenses. With regard to the 2008 indictment, defendant moved for the suppression of evidence seized from him at the police station following his arrest for defiant trespass. After conducting an evidentiary hearing, the trial judge denied defendant's motion for reasons expressed in an oral opinion. Defendant later, with regard to the 2008 indictment, pleaded guilty to third-degree possession of a controlled dangerous substance (CDS) with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3), and, with regard to the 2009 indictment, pleaded guilty to third-degree CDS possession with the intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7. The trial judge imposed concurrent eight-year terms, subject to four-year parole ineligibility periods, on these convictions.
In this appeal, defendant argues:
I. OFFICER COMEGNO DID NOT HAVE REASONABLE SUSPICION TO STOP, LET ALONE PROBABLE CAUSE TO ARREST, GIBSON FOR DEFIANT TRESSPASS BECAUSE, CONTRARY TO THE SPECIFIC REQUIREMENTS OF N.J.S.A. 2C:18-3b(2), THE OMEGA COMMUNITY CENTER DID NOT HAVE A POSTING NOTIFYING GIBSON AGAINST TRESPASS. EVEN IF THERE HAD BEEN NOTICE AGAINST TRESSPASS, THE TOTALITY OF THE CIRCUMSTANCES DID NOT GIVE RISE TO A WELL-GROUNDED SUSPICION THAT GIBSON WAS THE TYPE OF "UNWANTED" PERSON THAT THE OMEGA *210 HOUSE PRESIDENT HAD AN INTEREST IN REMOVING.
A. Comegno Did Not Have Reasonable Suspicion To Stop Gibson, Let Alone Probable Cause For a Full Custodial Arrest.
B. Even If Notice Against Trespass Had Existed, The Totality Of The Circumstances Did Not Furnish Comegno With Probable Cause To Believe That Gibson Committed Defiant Trespass.
II. EVEN IF THERE HAD BEEN PROBABLE CAUSE FOR GIBSON'S ARREST, THE SECOND, MORE INTRUSIVE SEARCH THAT OCCURRED AT THE STATION HOUSE, DURING WHICH THE DRUGS WERE FOUND, WAS UNCONSTITUTIONAL BECAUSE GIBSON HAD NOT BEEN GIVEN AN OPPORTUNITY TO POST BAIL. THEREFORE, THE TRIAL COURT ERRED IN DENYING GIBSON'S MOTION TO SUPPRESS.
III. IN THE EVENT THAT THIS COURT REVERSES THE DENIAL OF GIBSON'S MOTION TO SUPPRESS [WITH REGARD TO THE 2008 INDICTMENT], GIBSON REQUESTS THAT THE MATTER BE REMANDED FOR THE JUDGE TO RECONSIDER THE SENTENCE IMPOSED [WITH REGARD TO THE 2009 INDICTMENT].
We find insufficient merit in these arguments to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only the following comments regarding the legitimacy of the officer's street encounter and eventual arrest of defendant.
The arresting officer was the only individual to testify at the suppression hearing. He recounted that, on November 24, 2007, at 3:20 a.m., he was in Burlington City, in the vicinity of a community center owned by the Omega fraternity. According to the officer, the area in front of the facility was well lit and a first floor window displayed a sign that declared: "No Loitering."
The officer observed defendant standing on the Omega property, leaning against the facility's porch. As the officer approached, defendant began walking away. The officer drove around the corner and met up with defendant a short distance away.
The officer described how he then "simply struck up a conversation" with defendant. He asked defendant what he was doing in the area and requested identification. The officer explained that he engaged in this discussion in order "to determine whether or not [defendant] had permission to be on the [Omega] property or was maybe in the area waiting for somebody that resided at the property." Defendant responded to the officer that he was "coming from his child's mother's home," located two blocks away, and was waiting for a ride. The officer observed that defendant "seemed very excited, somewhat evasive" and believed defendant "was looking around as if he was attempting to run." The officer arrested defendant for trespassing on the Omega property.
The officer searched defendant at the scene "to eliminate the possibility of any weapons," and then transported defendant to the police station. There, defendant was more thoroughly searched, and a clear plastic baggie, which contained thirteen smaller bags of crack cocaine, was uncovered. This is the evidence that defendant sought to have suppressed.
The legitimacy of the officer's warrantless stop of defendant turned on whether the officer had "a reasonable suspicion of criminal activity," State v. Rodriguez, *211 172 N.J. 117, 126, 796 A.2d 857 (2002), arising from "specific and articulable facts ... taken together with rational inferences from those facts," Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). See also State v. Elders, 192 N.J. 224, 247, 927 A.2d 1250 (2007). We are satisfied, as was the trial judge, that the lateness of the hour, defendant's immediate departure from the Omega property upon seeing the officer, and defendant's excited and evasive demeanor when questioned, were all specific and articulable facts that gave the officer a reasonable suspicion of criminal activity.[1] And, when defendant failed to assert that he was on the Omega property with permission, the officer possessed probable cause to arrest defendant for defiant trespass.
We lastly consider defendant's contention that the requirements of the trespass statute were not met, thereby negating the police officer's assertion that he possessed a reasonable suspicion of criminal activity and, later, probable causethe foundation for the warrantless search. That is, N.J.S.A. 2C:18-3(b) defines defiant trespass as the act of "enter[ing] or remain[ing] in any place" without "license[] or privilege[]" where "notice against trespass is given" (emphasis added). The statute delineates three ways in which notice must be given; relevant here is the second: "[p]osting in a manner prescribed by law or reasonably likely to come to the attention of intruders." N.J.S.A. 2C:18-3(b)(2). Defendant argues that the officer did not have reasonable suspicion or probable cause that he had committed a defiant trespass because the property owner did not give sufficient notice to meet the statute's requirements.
We conclude, in the circumstances of this case, that the officer had probable cause to believe a defiant trespass had occurred even though the property owner posted a "no loitering" sign instead of a "no trespassing" sign. Indeed, there is nothing in our jurisprudence to suggest a stilted interpretation of N.J.S.A. 2C:18-3(b)(2) that would require the property owner to talismanically invoke the word "trespass" in the posting required as opposed to some other similar wording. To be sure, some of the cases defendant relied upon in this regard actually dealt with the fact that the property owner had posted a "no trespassing" sign,[2] but none of those cases suggests that N.J.S.A. 2C:18-3(b)(2) is satisfied only by the words "no trespassing." Notice sufficient to satisfy *212 the statute's requirements may be given through the utilization of other words so long as the owner's intent to keep others off the property is reasonably conveyed.[3]
In the final analysis, "no loitering" is a message sufficient to convey the same meaning as "no trespassing." Approached literally, "no loitering" could be understood as prohibiting "standing around or moving slowly about" the property, see Black's Law Dictionary 942 (6th ed.1990), or as prohibiting "wandering, remaining or prowling" on the property, N.J.S.A. 2C:33-2.1.[4] A property owner, in giving notice that "loitering" was not permitted expresses an intent that no person "stand around," "move slowly," "wander," "remain" or "prowl" on its property. Such a direction does not convey a significantly different message from a "no trespassing" sign as to preclude the police officer here from reasonably concluding that defendant was engaged in criminal activity by leaning against the porch of the Omega property.
Affirmed.
NOTES
[1] There is no doubt that the officer began the encounter as a field inquiry, which an officer may conduct without violating the Fourth Amendment or Article I, paragraph 7 of the New Jersey Constitution. A field inquiry occurs when an officer "merely approach[es] an individual on the street or in another public place, by asking him if he is willing to answer some questions," and then "by putting questions to him if the person is willing to listen." Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). When a field inquiry evolves to the point where "an objectively reasonable person feels [the] right to move has been restricted," Rodriguez, supra, 172 N.J. at 126, 796 A.2d 857, the warrantless street encounter becomes justifiable only if it may be classified as an investigative stop or if the officer had probable cause to justify an arrest.
[2] Only two of the four decisions cited by defendant reveal that the sign there in question actually stated "no trespassing." See State in the Interest of J.M., 339 N.J.Super. 244, 247, 771 A.2d 651 (App.Div.2001); State v. Vonderfecht, 284 N.J.Super. 555, 556, 665 A.2d 1145 (App.Div.1995). The thirdState v. Dangerfield, 171 N.J. 446, 452, 795 A.2d 250 (2002)observed only that the sign "warn[ed] against trespassing" without revealing the exact wording of the sign. And the fourth State v. Pierce, 175 N.J.Super. 149, 417 A.2d 1085 (Law Div.1980)appears only to have considered application of the trespass statute in the absence of any posted notice.
[3] We are mindful of the axiomatic proposition that penal statutes should be strictly construed. State v. Ciancaglini, 204 N.J. 597, 606, 10 A.3d 870 (2011). This general rule does not mean, however, that a penal statute should be construed in a manner that would produce absurd results. State v. Provenzano, 34 N.J. 318, 322, 169 A.2d 135 (1961). The adoption of defendant's proposed construction, which would require landowners to use the phrase "no trespassing" to the exclusion of all other similarly-worded signs in order to trigger criminal liability under the defiant trespass statute, would disserve the legislative intent.
[4] Interestingly, the word "loitering" is contained only in the statute's title as appearing in New Jersey Statutes Annotated"Loitering for purpose of illegally using, possessing or selling controlled substance"and appears nowhere in the actual text of the statute, which prohibits, when coupled with other conduct, the "wander[ing], remain[ing] or prowl[ing]" in a public place. N.J.S.A. 2C:33-2.1(b)(1). We think these terms convey what a reasonable person would assume to be loitering. We caution, however, that whatever insight this statute may provide into the meaning of "loitering" must be tempered with the understanding that the title appearing in New Jersey Statutes Annotated is likely not part of the statute, see L. 1991, c. 383, § 1, and thus does not appear to be "the product of legislative action," State v. Darby, 246 N.J.Super. 432, 440-41, 587 A.2d 1309 (App. Div.), certif. denied, 126 N.J. 342, 598 A.2d 898 (1991); see also N.J.S.A. 2C:1-1(g).