SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. David M. Gibson** (A-27-12) (070910)

**Argued October 8, 2013 -- Decided January 7, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers whether there was probable cause to arrest defendant for defiant trespass. Without probable cause to arrest, the warrantless search of defendant at the stationhouse cannot stand.

At about 3:20 a.m. on November 24, 2007, Officer Wayne Comegno observed, momentarily, defendant David Gibson leaning against an upraised porch on the Omega Community Center's private property. In a window looking out onto the building's porch, a posted sign read, "no loitering." According to Officer Comegno, the Community Center is located in a high-crime area and its president had requested that the police make checks due to incidents of criminal mischief. As the patrol car approached, Gibson moved on, walking a city block before being stopped and questioned by Officer Comegno. The officer asked Gibson for identification, where he was coming from, and whether he had permission to be on the Community Center's property. Gibson gave his name and explained that he was coming from his child's mother's home, which is located two blocks north of the Community Center, and that he was waiting for a ride. Officer Comegno testified that Gibson appeared "very excited" and "somewhat evasive," and that "he was looking around as though he was attempting to run." The officer did not, however, elaborate on how Gibson was "evasive." Based on his observations and interaction with Gibson, Officer Comegno concluded that Gibson had the intent to commit a defiant trespass, a petty disorderly persons offense, and arrested him. A subsequent search of Gibson at the police station uncovered thirteen bags containing crack cocaine. Gibson was charged with various drug crimes and subsequently moved to suppress the drug evidence, claiming that Officer Comegno did not have probable cause to make the arrest.

After a suppression hearing at which only Officer Comegno testified, the trial court found that the officer had probable cause to make an arrest for defiant trespass and therefore was authorized to conduct a search incident to an arrest. The Appellate Division affirmed the denial of the motion to suppress. State v. Gibson, 425 N.J. Super. 523 (App. Div. 2012). The panel stated that Officer Comegno's encounter with Gibson began as a field inquiry, and then evolved into an investigative stop given the officer's "reasonable suspicion of criminal activity" based on "the lateness of the hour, [Gibson's] immediate departure from the Omega property upon seeing the officer, and [Gibson's] excited and evasive demeanor when questioned." According to the appellate panel, the reasonable suspicion ripened into probable cause to arrest for defiant trespass "when [Gibson] failed to assert that he was on the Omega property with permission." Even though the property owner posted a "no loitering" sign instead of a "no trespassing" sign, the panel maintained that there was probable cause to arrest for defiant trespass because the owner's intent to keep others off the property was reasonably conveyed. The Court granted Gibson's petition for certification. 212 N.J. 460 (2012).

**HELD**: There is insufficient evidence in the record to support a finding that Officer Comegno had probable cause to arrest Gibson for defiant trespass; therefore, the subsequent search at the stationhouse was unconstitutional and the drug evidence seized during the search must be suppressed.

1. Under N.J.S.A. 2C:18-3(b), a person commits the petty disorderly persons offense of defiant trespass "if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given . . . in a manner . . . reasonably likely to come to the attention of intruders . . . ." This case deals only with the "enters" portion of the statute, which has no temporal requirement for a completed trespass. Provided sufficient notice is given against trespass, even a brief willful entry onto another's property may constitute a violation of N.J.S.A. 2C:18-3(b). The relevant inquiry here is whether Gibson was given "notice against trespass" in a manner "reasonably likely to come to [his] attention" and in a form so that he knew that he was not "licensed or privileged" to set even a foot on Omega's property or to lean against its porch. The answer depends on whether the

1

"no loitering" sign gave sufficient notice to make a reasonable person aware that even a slight and brief incursion on the property was a prosecutable offense. (pp. 11-14)

2. "No loitering" does not convey the same meaning as "no trespassing." As commonly understood and defined, "loitering" means remaining or lingering at a particular location for some indefinite period of time for no apparent purpose. On the other hand, trespass--particularly as used in the defiant trespass statute--prohibits the mere entering in a place when one is not licensed or privileged to do so. Unlike loitering, the "enters" portion of the trespass statute has no temporal element. Based on these commonly accepted definitions, it is fair to say that the "no loitering" sign in the porch window of the Omega Community Center communicated that a person should not be idly remaining or loafing on its property. (pp. 14-16)

3. The constitutionality of the arrest in this case, and the legitimacy of the subsequent stationhouse search, depends on whether there was probable cause to believe that Gibson was a defiant trespasser. Probable cause is a well-grounded suspicion that a crime has been or is being committed. In determining whether probable cause exists, a court must look to the totality of the circumstances, and view those circumstances from the standpoint of an objectively reasonable police officer. In addition, the State bears the burden of proving by a preponderance of the evidence that the officer had probable cause to make the arrest. Although the trial court's credibility assessments are entitled to deference, the Court is not obliged to defer to the ultimate finding of probable cause when the facts and inferences do not support that conclusion. (pp. 17-24)

4. According to the record, Gibson was seen leaning on the porch for no more than a few moments before he began walking. As soon as the officer saw Gibson, Gibson moved on, but did not take flight or dart between buildings. Although Officer Comegno claimed that Gibson was "evasive" and looked as though he might "run," he gave no factual support for those subjective feelings. In addition, although the officer cited, as one basis for making the arrest, Gibson's failure to give "lawful reasons" for leaning on the porch, Gibson explained why he was on the street at that hour. The notice on the Omega property did not suggest that leaning on the porch for a very brief period of time would subject Gibson to a defiant trespass prosecution. Gibson was instead warned against loitering, which has a distinctly different meaning than trespass. Momentarily leaning against a building, or an upraised porch, on a city block, would not be considered loitering to an objectively reasonable citizen. If Gibson was not loitering, then Officer Comegno could not have formed a well-grounded suspicion that Gibson was defiantly trespassing. Therefore, the record does not support that Officer Comegno had probable cause to arrest Gibson for defiant trespass. The police station search cannot stand because it was incident to an unconstitutional seizure. (pp. 24-28)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

DAVID M. GIBSON

    Defendant-Appellant.


        Argued October 8, 2013 -- Decided January 7, 2014.

        On certification to the Superior Court, Appellate Division, whose opinion is reported at 425 N.J. Super. 523 (2012).

        Alyssa A. Aiello, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).

        Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    The right to walk freely on the streets of a city without fear of arbitrary arrest is one of the guarantees protected by the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution.  A person cannot be arrested unless there is probable cause to believe that he has committed or is committing an offense.  An arrest

without probable cause is an unreasonable seizure in violation of both the Federal and State Constitutions.

In the early morning hours of November 24, 2007, a police officer on vehicular patrol observed, momentarily, defendant David Gibson leaning against a building's upraised porch on a street corner in the City of Burlington. In a window looking out onto the building's porch, a posted sign read, "no loitering." Gibson moved on, walking a whole city block before he was stopped and questioned by the officer. According to the officer, the ground on which Gibson stood as he leaned against the porch was private property. On that basis, in addition to Gibson's nervous demeanor after the stop, the officer concluded that Gibson had the intent to commit a defiant trespass, a petty disorderly persons offense, and arrested him.

Gibson moved to suppress drug evidence discovered during a search at the stationhouse because, as he claims, the officer did not have probable cause to make the arrest. After a hearing at which the arresting officer testified, the trial court denied the suppression motion, and the Appellate Division affirmed.

Even given our deferential standard of review, we cannot hold that there is sufficient credible evidence in the record to support the trial court's finding that the officer had probable cause to believe that Gibson was a defiant trespasser. Because we conclude that the trial court's finding of probable cause was

2

clearly mistaken, we must reverse the Appellate Division and remand for entry of an order suppressing the evidence.

## I.

Defendant was charged in a Burlington County indictment with second-degree possession of a controlled dangerous substance (CDS), namely cocaine, with intent to distribute within 500 feet of certain public property, N.J.S.A. 2C:35-7.1; third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7; third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); and third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1). Gibson moved to suppress CDS evidence discovered on him after his arrest for defiant trespass. He claimed that his arrest was an unconstitutional seizure and therefore the following search invalid, requiring suppression of the evidence under the exclusionary rule.

At the suppression hearing in Superior Court, Burlington County, only one witness testified, Officer Wayne Comegno of the Burlington City Police Department. The factual record consists entirely of the testimony of Officer Comegno.

### A.

At about 3:20 a.m. on November 24, 2007, Officer Comegno, a four-year veteran, was patrolling in a squad car in the New

3

Yorkshire area -- a historic section of the city also known to him for its history of violent crimes and drug activity. The president of the Omega Community Center had asked the police to check the property "because of incidents of criminal mischief." The Community Center is a three-story building that "sits on the corner of York and Jones Avenue." On the York Street side, the building has an upraised porch -- two feet off ground level -- with two windows facing off the porch. In the upper half of one of the windows was a "no loitering" sign.

As Officer Comegno drove south on York Street, he noticed David Gibson "leaning against the porch of the Omega Community Center." Officer Comegno concluded that the ground on which Gibson was standing, as he leaned against the porch, was the private property of the Community Center. The record does not reveal how many feet or inches Gibson stood off the sidewalk or street onto Omega's property by Officer Comegno's reckoning. According to the officer, the area was illuminated and the "no loitering" sign, which he could see from his car, was approximately two feet from where Gibson was standing.

As the patrol car approached him, Gibson began walking south on York Street. This was apparently just moments after Officer Comegno first caught sight of him. As Gibson crossed over Jones Avenue and headed towards Green Street, Officer Comegno did not pull his patrol car over and attempt to stop

4

him.  Instead, the officer drove around the block.  After Gibson walked the full length of the block and reached the intersection of York Street and Green Street, Officer Comegno rounded the corner and "intercepted" him.  The officer exited his patrol car and asked Gibson for identification.  He also asked Gibson where he was coming from and whether he had permission to be on Omega's property.  Gibson gave his name and explained that he was coming from "his child's mother's home located at 200 East Broad Street," which is located two blocks north of the Omega Community Center.  He told the officer that "[h]e was waiting for a ride, something along those lines."  To Officer Comegno, Gibson appeared "very excited" and "somewhat evasive," and the officer thought "he was looking around as though he was attempting to run."  The officer did not elaborate on how Gibson was "evasive," and Gibson did not flee.

Officer Comegno "felt that there was an intent to trespass at the Omega Community Center" based on his observations and interaction with Gibson and therefore "placed him under arrest." Only after he spoke with Gibson did he conclude that Gibson had "the intent to trespass."  Officer Comegno admitted that he did not see Gibson involved in any criminal activity while he leaned against the Community Center's porch, but offered that one of the reasons for making the arrest was Gibson's failure to give "lawful reasons" for leaning on the porch.

5

Officer Comegno handcuffed Gibson and searched him before placing him in the patrol car. No weapons or contraband were found on his person at that time. At the Burlington City police station, a more thorough search of Gibson uncovered thirteen clear plastic bags containing crack cocaine.

Officer Comegno explained that arresting Gibson for the petty disorderly persons offense of defiant trespass, as opposed to issuing a summons at the scene, was part of normal procedure. He conceded that, at times, he issued summonses for offenses, but only when directed by a supervisor, and he did not contact a supervisor that night.

B.

The trial court denied the motion to suppress based on Officer Comegno's testimony. The court recounted that Officer Comegno, an experienced officer familiar with the area, "observed a black male . . . David Gibson standing on the property of the Omega Community Center . . . leaning on the front porch" at a time when the Community Center was not open to the public. The court stressed that a "no trespassing sign was posted at porch level in the window." The court also noted that Officer Comegno thought that Gibson was "acting furtively" and "was going to run away." The court found that the officer had probable cause to make an arrest for defiant trespass and therefore was authorized to conduct a search incident to an

6

arrest.  The court emphasized it did not read our decision in
State v. Dangerfield, 171 N.J. 446 (2002), to limit the scope of
a search incident to an arrest to a weapons search -- a safety
search -- when the charge is for the petty disorderly persons
offense of defiant trespass.

C.

After the denial of his suppression motion, in accordance
with a plea agreement, Gibson pled guilty to third-degree
possession with intent to distribute CDS.  The court sentenced
Gibson on that charge to a term of eight years in State Prison
with a four-year parole disqualifier and imposed all requisite
fines and penalties.[1]  The remaining charges in the indictment
were dismissed.

II.

The Appellate Division affirmed the denial of the motion to
suppress.  State v. Gibson, 425 N.J. Super. 523 (App. Div.
2012).  The panel stated that Officer Comegno's encounter with
Gibson began as a field inquiry, id. at 527 n.1, and then
evolved into an investigative stop given the officer's
"reasonable suspicion of criminal activity" based on "the

_____

[1] The judgment of conviction does not explain the basis for
sentencing Gibson in the range of a second-degree crime for a
third-degree offense.  Perhaps Gibson was sentenced to an
extended term; we do not know from this record.

7

lateness of the hour, [Gibson's] immediate departure from the Omega property upon seeing the officer, and [Gibson's] excited and evasive demeanor when questioned," id. at 527. According to the appellate panel, the reasonable suspicion for the investigative stop ripened into probable cause to arrest for defiant trespass "when [Gibson] failed to assert that he was on the Omega property with permission." Id. at 527-28.

The panel maintained that Officer Comegno had probable cause to arrest under the defiant trespass statute, N.J.S.A. 2C:18-3(b), "even though the property owner posted a 'no loitering' sign instead of a 'no trespassing' sign." Id. at 528. "[S]o long as the owner's intent to keep others off the property is reasonably conveyed," the panel reasoned, the statute's notice requirement is met. Id. at 529. In the panel's view, "'no loitering' is a message sufficient to convey the same meaning as 'no trespassing.'" Ibid. The panel concluded that the "no loitering" sign gave the officer a reasonable basis to conclude that Gibson "was engaged in criminal activity by leaning against the porch of the Omega property." Id. at 530.[2]

---

[2] The panel did not find sufficient merit to discuss Gibson's argument that he should have been given the opportunity to post bail before he was searched at the stationhouse. Id. at 526.

8

We granted Gibson's petition for certification. <u>State v.</u>
<u>Gibson</u>, 212 <u>N.J.</u> 460 (2012).

III.

A.

Gibson argues that his arrest was unconstitutional because
it was not supported by probable cause and therefore the search
incident to the arrest was invalid as well. He also contends
that "a 'no loitering sign' cannot adequately warn against
trespass because 'loitering' and 'trespassing' denote different
types of conduct." Gibson points out that "'loitering' is
commonly understood to mean presence in a place for a prolonged
period of time, with no aim or purpose," whereas a defiant
trespass means an unprivileged entry onto another's property
where there is adequate notice against trespass. The
distinction between the two, Gibson claims, is critical. He
submits that "the 'no loitering' sign adequately warned [him]
that he could not idly remain on Omega property for a prolonged
time," but that the sign did not adequately warn him that he
would be subject to prosecution for "briefly lean[ing] against
the porch as he waited for a ride." He cautions that clothing
the police with the authority to arrest under circumstances such
as here, "creates [the] grave potential for official
harassment."

9

Gibson also claims that the police violated his Fourth Amendment rights by conducting a warrantless search at the stationhouse. He posits that "the stationhouse search was not a search incident to an arrest" because the arrest and search occurred at the scene and further that "the police did not have authority to conduct an inventory search before releasing [him] on his own recognizance or giving him an opportunity to post bail."

B.

The State submits that, given the totality of the circumstances, Officer Comegno had a well-grounded suspicion, and therefore probable cause, to arrest Gibson for the petty disorderly persons offense of defiant trespass. The circumstances warranting an objectively reasonable police officer finding probable cause for defiant trespass, according to the State, include Gibson's leaning on the porch of the Omega property, the officer's knowledge that the property was in a high-crime area, prior complaints of the property owner about trespassers, the officer's observation that Gibson appeared to be "very excited" and "somewhat evasive" when questioned, and Gibson's failure to provide a "lawful reason" for "leaning against the raised porch." The State insists that the "no loitering" sign was sufficient to give Gibson notice against trespassing on Omega's property, for the reasons expressed by

10

the Appellate Division. Alternatively, it submits that even if the notice element of defiant trespass was not satisfied, "[Gibson's] relief should not be suppression of the evidence under the exclusionary rule," but dismissal of the defiant trespassing charge "on legal sufficiency grounds."

The State also argues that the police conducted a permissible search of Gibson at the stationhouse. It proffers that "because Officer Comegno could only perform a limited search incident to arrest at the scene, it was entirely appropriate . . . to continue the search at the police station so that a full search incident to arrest could be conducted there." Citing Dangerfield, supra, 171 N.J. 446, the State submits that there is no legitimate authority for Gibson's position that he is "'presumptively entitled to be released upon the issuance of a summons, rather than being arrested.'"

IV.

The decisive issue before us is whether Officer Comegno had probable cause to arrest Gibson for defiant trespass. In the absence of probable cause to arrest, the search at the scene and the search at the stationhouse cannot pass constitutional muster. To determine whether the officer had a constitutional basis to arrest Gibson, we first must understand the statutory requirements of defiant trespass.

11

A person commits the petty disorderly persons offense of defiant trespass,

> if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> > (1) Actual communication to the actor; or
> >
> > (2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
> >
> > (3) Fencing or other enclosure manifestly designed to exclude intruders.
>
> [N.J.S.A. 2C:18-3(b).][3]

This case deals only with the "enters" portion of the statute, which has no temporal requirement for a completed trespass. Provided sufficient notice is given against trespass, even a brief willful entry onto another's property may constitute a violation of N.J.S.A. 2C:18-3(b). In contrast, under the "remains" portion of the statute, a person who is privileged or licensed to enter onto property may be prosecuted for defiant trespass if he refuses to leave after he is told to do so. There, the duration of the incursion -- how long he "remains" unwelcome on the property -- is a factor. See, e.g., State v.

---

[3] A person convicted of a petty disorderly persons offense may be sentenced to a term of imprisonment not to exceed thirty days. N.J.S.A. 2C:43-8.

Slobin, 294 N.J. Super. 154, 156 (App. Div. 1996) (affirming conviction where defendants "sat at [a] table for a period of forty minutes after being asked to leave and refus[ed] to do so"); State v. Dargon, 165 N.J. Super. 500, 503-04 (App. Div. 1978) (holding, under predecessor statute, that although defendants were permitted entry, "their deliberate and persistent refusal to leave pursuant to the several requests rendered them wilful trespassers").

The heart of N.J.S.A. 2C:18-3(b) is the notice provision. See II The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission § 2C:18-3 cmt. 2, at 212 (1971) ("The theory of this Section is that where a landowner wishes to assert his right to exclude from open land and to have the backing of the criminal law, it is not too much to ask him to give notice.").

The questions here are whether Gibson was given "notice against trespass" in a manner "reasonably likely to come to [his] attention" and in a form so that he knew that he was not "licensed or privileged" to set one foot on the curtilage of Omega's property or to lean against its porch. N.J.S.A. 2C:18-3(b). In other words, did Gibson know -- or for that matter would any reasonable person have known -- that by leaning against the upraised porch, even momentarily, he would commit the offense of defiant trespass? That all depends on whether

13

the "no loitering" sign in the window overlooking the Community Center's porch gave sufficient notice to make a reasonable person aware that even a slight and brief incursion on the property was a prosecutable offense.

The Appellate Division expressed the opinion that "'no loitering' is a message sufficient to convey the same meaning as 'no trespassing.'" Gibson, supra, 425 N.J. Super. at 529. At least in the circumstances of this case, we cannot agree with that proposition.

As commonly understood, loitering suggests remaining or lingering in a location for some indefinite period for no apparent purpose. See Webster's Third International Dictionary 1331 (1981) (defining "loiter" as "2 a : to remain in or near a place in an idle or apparently idle manner: hang around aimlessly or as if aimlessly <vagrants found [loitering] outside the building>"); The American Heritage Dictionary 740-41 (2d College ed. 1991) (defining "loiter" as "1. To stand idly about; linger aimlessly. 2. To proceed slowly or with many stops. 3. To delay or dawdle"); Black's Law Dictionary 1027 (9th ed. 2009) (defining "loitering" as "[t]he criminal offense of remaining in a certain place (such as a public street) for no apparent reason").

Under the New Jersey Code of Criminal Justice, a person commits the disorderly persons offense of "[l]oitering for [the]

14

purpose of illegally using, possessing or selling controlled substance," N.J.S.A. 2C:33-2.1, if "he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing" CDS, N.J.S.A. 2C:33-2.1(b)(1). In Camarco v. City of Orange, the Appellate Division addressed a challenge to the constitutionality of a municipal loitering statute that defined loitering as "remaining idle in essentially one location," "spending time idly loafing or walking," and "'hanging around.'" 116 N.J. Super. 531, 533 (App. Div. 1971), aff'd, 61 N.J. 463 (1972). See also Chicago v. Morales, 527 U.S. 41, 51 n.14, 119 S. Ct. 1849, 1856 n.14, 144 L. Ed. 2d 67, 77 n.14 (1999) (referencing Chicago ordinance defining "'loiter' to mean 'to remain in any one place with no apparent purpose'").

All of these definitions and applications of loitering convey something more than a temporary or brief respite at a particular location. On the other hand, trespass -- particularly as used in the defiant trespass statute -- has a distinctly different meaning. N.J.S.A. 2C:18-3(b) prohibits the mere entering -- not just idly remaining -- in a place, when one is not licensed or privileged to do so. Unlike loitering, the "enters" portion of the trespass statute has no temporal element.

It is fair to say, given the commonly accepted definitions of loitering, that the "no loitering" sign in the porch window

15

of the Omega Community Center communicated nothing more than that a person should not be idly remaining or loafing on its property.[4]  Through the commonly understood meaning of loitering and the requirements of the defiant trespass statute, we must judge whether Officer Comegno had probable cause to arrest Gibson.

## V.

The central issue is not whether Officer Comegno was authorized to conduct a field inquiry or an investigative stop of Gibson, but rather whether he had probable cause to make an arrest.

### A.

A field inquiry "occurs when a police officer approaches an individual and asks 'if the person is willing to answer some questions.'"  State v. Pineiro, 181 N.J. 13, 20 (2004) (quoting State v. Nishina, 175 N.J. 502, 510 (2003)) (alteration omitted).  So long as the questioning "is not harassing,

---

[4] Although we are not dealing with a loitering statute in this case, it bears mentioning that such statutes have been subject to constitutional challenge on vagueness grounds.  Some loitering statutes have been notorious for "fail[ing] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and for "authoriz[ing] and even encourage[ing] arbitrary and discriminatory enforcement." See Morales, supra, 527 U.S. at 56, 119 S. Ct. at 1859, 144 L. Ed. 2d at 80.

overbearing, or accusatory in nature," Nishina, supra, 175 N.J. at 510, and the person is free to refuse to answer and "'go on his way,'" Florida v. Royer, 460 U.S. 491, 498, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229, 236 (1983) (citations omitted), the person's Fourth Amendment rights are not implicated, ibid.

A police officer may conduct an investigative stop when, "based on specific and articulable facts," he has a reasonable suspicion that a person is engaged in criminal activity. Pineiro, supra, 181 N.J. at 20 (citations omitted). An investigative stop occurs when "a reasonable person would have believed that he was not free to leave" and constitutes a "seizure" under the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980). An officer's subjective, good-faith hunch does not justify an investigatory stop -- even if that hunch proves correct. See State v. Arthur, 149 N.J. 1, 8 (1997). The duration of an investigative stop must be limited in time and scope to the purpose that justified the stop in the first place. Royer, supra, 460 U.S. at 500, 103 S. Ct. at 1325, 75 L. Ed. 2d at 238.

There is no question that Officer Comegno had the right to ask questions of Gibson -- that is, to conduct a field inquiry. We need not resolve whether Gibson was subject to an investigative stop because the officer placed him under arrest

17

immediately after questioning him.  The legitimacy of the stationhouse search depends simply on whether Officer Comegno had probable cause to make the arrest.

Both the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution provide for "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  In the absence of probable cause to believe that a person has committed or is committing an offense, an arrest is an unreasonable seizure in violation of our Federal and State Constitutions.  See Dangerfield, supra, 171 N.J. at 455-56.  The lawfulness of the arrest in this case depends on whether Officer Comegno had probable cause to believe that Gibson had committed a defiant trespass on the property of the Omega Community Center.

Probable cause has been defined as "a well grounded suspicion that a crime has been or is being committed," State v. Sullivan, 169 N.J. 204, 211 (2001) (citation and internal quotation marks omitted), and as "a reasonable ground for belief of guilt," Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879, 1890 (1949) (citations and internal quotation marks omitted).  It "is more than a mere suspicion of guilt, [but] less than the evidence necessary to

18

convict a defendant of a crime in a court of law." State v. Basil, 202 N.J. 570, 585 (2010) (citing Brinegar, supra, 338 U.S. at 175, 69 S. Ct. at 1310, 93 L. Ed. at 1890). It "is a fluid concept -- turning on the assessment of probabilities in particular factual contexts" and addresses "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231-32, 103 S. Ct. 2317, 2328-29, 76 L. Ed. 2d 527, 544 (1983) (citation omitted). Last, "[i]n determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances, and view those circumstances from the standpoint of an objectively reasonable police officer." Basil, supra, 202 N.J. at 585 (citation and internal quotations marks omitted).

C.

The default position in our constitutional jurisprudence is that warrantless searches are presumptively invalid. State v. Frankel, 179 N.J. 586, 598, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004), overruled in part by State v. Edmunds, 211 N.J. 117 (2012); see also Kentucky v. King, 563 U.S. __, __, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865, 874 (2011). For that reason, the State bears the burden of proving by a preponderance of the evidence that a warrantless search falls within one of the "'well-delineated exceptions' to the

19

warrant requirement" of the Fourth Amendment and Article I, Paragraph 7 of our State Constitution. Frankel, supra, 179 N.J. at 598 (quoting Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290, 298-99 (1978)). In this case, the State claims that the warrantless search of Gibson at the stationhouse was incident to his arrest. See State v. Moore, 181 N.J. 40, 45 (2004) (citing Chimel v. California, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685, 694 (1969)) (holding that search incident to arrest is exception to warrant requirement). The validity of the search, however, depends on the constitutionality of the arrest. See ibid. Therefore, the State bears the burden of showing that Officer Comegno had probable cause to make the arrest.

At the suppression hearing, the trial court heard testimony from Officer Comegno and determined that he had probable cause to arrest Gibson for defiant trespass. Inasmuch as that finding is based on the court's credibility assessment of Officer Comegno, the only witness who testified, it is entitled to deference -- but not blind deference. This Court is not obliged to defer to clearly mistaken findings -- findings that are not supported by sufficient credible evidence in the record. See State v. Elders, 192 N.J. 224, 245 (2007) (noting that trial court's "findings were entitled to deference unless they were 'clearly mistaken' or 'so wide of the mark' that the interests

20

of justice required appellate intervention." (citing N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007))); State v. Johnson, 42 N.J. 146, 162 (1964) (stating that aim of appellate review is "to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record"). Nor is the Court obliged to defer to the ultimate finding of probable cause when the facts and inferences do not support that conclusion.

For example, in State ex rel. J.M., 339 N.J. Super. 244, 256-57 (App. Div. 2001), the Appellate Division overturned the trial court's denial of a motion to suppress because the trial court clearly erred in finding that a police officer had probable cause to arrest the defendant for defiant trespass. In J.M., one evening, a resident told a police officer that "she was having a problem with people 'hanging out' on her porch and dealing drugs." Id. at 246. The officer testified that "the police had received complaints about trespassers and narcotics activity in that area" and that he had personally "made arrests at that location." Id. at 247. That same evening, the officer observed three people on the resident's porch, none of whom appeared to be engaged in criminal activity. Ibid. The officer spoke with the resident, who advised him that two of the people on the porch were her relatives and that she did not know the third person -- the juvenile defendant. Ibid. When the officer

21

asked the defendant why he was on the porch, he responded that he was "hanging out." Ibid. Although the resident did not ask that the defendant be removed, the officer pointed out to the defendant the "'no trespassing' sign in the window of the house" and arrested him for defiant trespass. Ibid. A search of the defendant at the police station uncovered drugs on his person. Ibid.

The Appellate Division in J.M. found the evidence insufficient to support the trial court's finding of probable cause to arrest. Id. at 248. It determined that "it belies common sense that [the defendant] just wandered off the street to join two other young people who were not trespassers," that it was "highly unlikely" that one of the resident's relatives had not invited him to be there, and that the police failed "to make a good faith evaluation of the circumstances presented . . . before effectuating an arrest." Id. at 248-49.

Also significant to our analysis is Dangerfield, supra, 171 N.J. 446. There, we determined that the State failed to show that, under the totality of the circumstances, a detective had a well-grounded suspicion -- or, in other words, probable cause -- to arrest the defendant for defiant trespass. Id. at 457. Thus, we affirmed a suppression motion because the search was incident to an unlawful arrest. Id. at 458. In Dangerfield, a police detective observed the defendant sitting on a bicycle in

22

a public housing project, where "no trespassing" signs were posted.  Id. at 457.  The detective had encountered the defendant on two previous occasions, on each of which the defendant gave a "legitimate and lawful" explanation for his presence.  Ibid.  On this occasion, the defendant saw the detective and another detective and "rode away on his bicycle." Ibid.  The detectives stopped the defendant and questioned him about his flight.  Ibid.  He explained that he was "doing nothing."  Id. at 451.  The defendant was arrested for defiant trespassing.  Ibid.  This Court emphasized that the defendant was never "asked whether he knew or was visiting anyone at the complex," although such questioning was part of established protocol for "approaching suspected trespassers."  Id. at 457. This Court also pointedly stated that "flight alone does not create reasonable suspicion for a stop, let alone probable cause."  Ibid. (citing State v. Tucker, 136 N.J. 158, 168-69 (1994)).

Both J.M. and Dangerfield demonstrate that courts carefully assess whether the probable-cause justification for an arrest for defiant trespass is supported by the fair inferences that can be drawn from the record.  We now must determine whether, viewed through the eyes of an objectively reasonable police officer, there was sufficient credible evidence to support the arrest of Gibson for defiant trespass.

VI.

Even under our deferential standard of review, we cannot find an objectively reasonable basis for Gibson's arrest. At 3:20 a.m., while in his patrol car, Officer Comegno observed a black male -- whom he later learned was David Gibson -- leaning against the upraised porch of the Omega Community Center. In a window facing the porch was posted a "no loitering" sign. Whether the sign was directed to those who ventured onto the porch or those lingering in the outermost part of the property or curtilage -- or even the sidewalk -- is not evident from the record. Based on the record, and given the limited time for the officer's observations, it appears that Gibson was seen leaning on the porch for no more than a few moments, and may not have been standing more than a foot on Omega's property, before he began walking south on York Street. The State presented no evidence regarding the degree of encroachment on Omega's property, whether inches or feet, or how long the encroachment lasted, whether seconds or longer. The State bore the burden of proving by a preponderance of the evidence that Officer Comegno had probable cause to arrest Gibson.

The officer did not see Gibson engaged in any illegal activity. As soon as the officer saw Gibson, Gibson moved on. Gibson's observed conduct hardly fits the commonly understood

24

meaning of loitering -- remaining in a place in an idle manner, hanging around, lingering aimlessly, or loafing.

Although Officer Comegno was driving south in the same direction in which Gibson was walking, he did not stop Gibson immediately. Instead, he drove around the block and intercepted Gibson after Gibson had walked the length of York between Jones Avenue and Green Street. Gibson did not take flight, or dart between buildings, after he spotted the patrol car.

No one can quarrel with the officer's decision to approach Gibson and ask him some questions. Gibson identified himself and stated that he had been visiting his child's mother, who lived two blocks north of the Omega Community Center, and that he had been "waiting for a ride." Although Officer Comegno claimed that Gibson was "evasive" and looked as though he might "run," he gave no factual support for those subjective feelings. The officer cited, as one basis for making the arrest, Gibson's failure to give "lawful reasons" for leaning on the porch, but Gibson explained why he was on the street at that hour.

We accept the trial court's credibility findings concerning Officer Comegno's testimony. We accept that the Omega Community Center is located in a high-crime area and that the Community Center's president had asked the police to make checks because there had been incidents of criminal mischief. We cannot

25

accept, however, the inferences drawn by the officer because they are not objectively reasonable.

The constitutional right to be free from arbitrary arrest is not suspended in high-crime neighborhoods where ordinary citizens live and walk at all hours of the day and night. Momentarily leaning against a building, or an upraised porch, on a city block, would not be considered loitering to an objectively reasonable citizen. That would be so even if the passerby was standing a foot or two on the curtilage of the building's property.

If Gibson was not loitering, as the term is conventionally understood, then how could Officer Comegno have formed a well-grounded suspicion that Gibson was defiantly trespassing on Omega's property? As we explained earlier, trespass and loitering are terms with distinctly different meanings. The notice on the Omega property did not suggest that leaning on the porch for a very brief period would subject the offender to a defiant trespass prosecution. The "notice against trespass" had to be communicated in a manner that would have made a reasonable person aware that setting even a foot on the curtilage or leaning against the porch was unlawful. N.J.S.A. 2C:18-3(b).

It bears mentioning that the trial court, in reciting its factual findings, mistakenly referred to a "no trespassing" sign in the porch window. We do not know whether this was a slip of

26

the tongue or a mistaken belief that may have affected the resulting legal conclusion. Nevertheless, this error ultimately is of little moment in our analysis.

We do not suggest that a "notice against trespass" must be phrased in some talismanic form. There are a multitude of ways in which the message can be conveyed. Had Gibson remained idly leaning on the porch for an extended period of time, perhaps Gibson's conduct would have had the appearance of loitering, and Officer Comegno might then have had a reasonable suspicion of defiant trespassing. But that is not the case here.

The State argues that Gibson's walking away from the Omega Community Center gave rise to reasonable suspicion on the part of Officer Comegno. But had he remained where he had stood Gibson surely would have been loitering. This type of Catch-22 scenario cannot support a probable cause determination. Even flight, standing alone, will not support a well-grounded suspicion for a defiant trespass arrest. See Dangerfield, supra, 171 N.J. at 457.

The defiant trespass statute cannot be used as an instrument for random stops and arrests. That was made clear in both Dangerfield and J.M. The State had the burden of justifying the warrantless arrest in this case. We must view the propriety of Officer Comegno's actions through the lens of the objectively reasonable police officer. We conclude that

27

even under the deferential standard that guides appellate review, the State has failed to show that Officer Comegno had probable cause to arrest Gibson for defiant trespass.  In short, there is insufficient evidence in the record to support a finding of probable cause.  The search at headquarters cannot stand because it was incident to an unconstitutional seizure.  See State v. Badessa, 185 N.J. 303, 311 (2005) (citing Wong Sun v. United States, 371 U.S. 471, 485, 83 S. Ct. 407, 416, 9 L. Ed. 2d 441, 454 (1963)).  For that reason, we are compelled to suppress the fruits of that search.

We need not reach Gibson's second argument:  that he should have been given the opportunity to post bail before the stationhouse search.  However, we do not hesitate to offer that once an officer lawfully arrests a suspect, he has the right and duty to search him for weapons and contraband before placing him in a patrol car.  See Chimel, supra, 395 U.S. at 762-63, 89 S. Ct. at 2040, 23 L. Ed. 2d at 694.  It also follows that the police have the authority to ensure, at headquarters, that a person under arrest is not armed with a weapon.

VII.

For the reasons given, we reverse the judgment of the Appellate Division and suppress the evidence seized during the

28

stationhouse search.  We remand for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-27                     SEPTEMBER TERM 2012

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

DAVID M. GIBSON,

        Defendant-Appellant.


DECIDED              January 7, 2014
                Chief Justice Rabner              PRESIDING
OPINION BY                Justice Albin
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

30