**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4695-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY L. CONCEPCION,

     Defendant-Appellant.

_____

> Argued September 17, 2018 – Decided October 17, 2018
>
> Before Judges Messano and Gooden Brown.
>
> On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 15-02-0184.
>
> Lauren S. Michaels, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Lauren S. Michaels, of counsel and on the briefs).
>
> Jane C. Schuster, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, of counsel and on the brief).

PER CURIAM

Defendant Anthony Concepcion appeals from a May 16, 2017 judgment of conviction for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Defendant moved to suppress the handgun seized without a warrant, which formed the evidential basis for the charge. When his motion was denied, defendant entered a negotiated guilty plea and was sentenced to a five-year term of imprisonment with a three-and-one-half year period of parole ineligibility, in accordance with the Graves Act, N.J.S.A. 2C:43-6(c). On appeal, defendant challenges the denial of his suppression motion as permitted under Rule 3:5-7(d). We affirm.

The following facts were adduced at the suppression hearing, during which Detective Tara Dzurkoc and Officer Noel Santiago, both thirteen-year veterans of the Trenton Police Department, testified for the State. In September 2014, Dzurkoc and Santiago were part of the Impact Unit, a proactive unit assembled to target violent offenders and street level narcotics activity. At the start of their shift on September 30, 2014, they were advised during roll call to focus their attention on Chestnut Park due to citizen complaints that the park was being "utilized for dealing narcotics, smoking narcotics and weapon violations . . . ."

After roll call, Dzurkoc, Santiago, and other uniformed members of the unit arrived at the park around 6:30 p.m. in unmarked vehicles. Upon exiting her vehicle and entering the park, Dzurkoc observed two people on a bench to the right of her, a few other people in front of the bench, and others standing around the playground area. Dzurkoc's attention was immediately drawn to one of the two people seated on the bench, who was later identified as defendant, "[b]ecause he made a furtive movement" by tossing "a box of Newport cigarettes." According to Dzurkoc, defendant "tossed" the cigarette box a "couple [of] inches" "to [his] left" and the box landed on the bench within arm's reach, about "a foot" away from "[w]here [defendant] was seated."

Dzurkoc, who made the observation from approximately fifteen feet away, continued to watch defendant and briskly walked towards him, closing the distance between them within "a couple seconds." When Dzurkoc arrived at the bench and observed the cigarette box, "[i]t was partially opened" about one-quarter to one-half inch, allowing her to see "a blue tint" inside the box. Based on her professional involvement in "[o]ver a thousand" narcotics investigations and her personal habit of smoking "a pack [of cigarettes] a day," Dzurkoc immediately associated the blue tint with narcotics packaging and "knew" that the cigarette box contained "[n]arcotics." According to Dzurkoc, "[b]lue [was]

A-4695-16T3

a very popular color with marijuana . . . packaging for some odd reason." Upon seizing and searching the box, Dzurkoc found "[n]ine bags of marijuana" packaged in "[s]mall blue-tinted Ziploc baggies." She placed defendant under arrest, conducted a pat down with negative results, handcuffed him, and later transported him with Santiago to police headquarters.

Upon arriving at police headquarters, Santiago escorted defendant to the booking area where prisoners were processed by being "logged [into] a book" and "search[ed]" for personal items, such as "[s]hoe laces, belt[s], [and] cell phones," which were not permitted "in City lockup" and would be confiscated prior to commitment. During that process, Santiago conducted a search of defendant and found a loaded .380 caliber semiautomatic handgun in defendant's "front waistband area" above the waistline, towards the center of his body. According to Santiago, when he "felt a hard object in the front, [he] thought it was a cell phone" but "realized it was a handgun" when he "retrieve[d] the object."

In an oral decision following the hearing, the motion judge denied the motion, finding that "the State . . . met its burden" and established that both the search at the park and at headquarters were "reasonable under the circumstances." Although the judge found Dzurkoc's "ability to make

4

judgments in terms of distance" "absolutely horrendous," he found both officers "credible" and made factual findings consistent with their respective testimony. The judge determined that Dzurkoc's plain view observation of the "blue plastic," which she had seen "many times . . . in connection with drugs," allowed her to seize the Newport cigarette box, search it, and place defendant under arrest. He explained:

> So she had, number one, a belief that there[] [were] issues in the park, and that[] [was] what the briefing was all about. That[] [was] why they were there. They came [en] masse, probably eight officers, give or take one, but there were four cars. She was there first. She was observing things. She described furtive movement. Not a lot of furtive movement, but enough to have the defendant in her view distancing himself from something that had been in his hand. That prompted her to walk, as she said, briskly to the area and to make certain observations, and she did. The observations that she made were consistent entirely with the type of drug trafficking that she is used to day in and day out. Her suspicions in this [c]ourt's judgment did rise to the level of probable cause to make a seizure of that package and to look at it further. And, of course, once that was done[,] the defendant is under arrest.

Turning to the search at police headquarters, the judge determined that although the handgun was not found by Dzurkoc during the search at the park, "there was cause, of course, to conduct a further search at the station before the defendant was placed in his holding cell . . . ." The judge reasoned,

5                                                                                           A-4695-16T3

[Santiago] conducted a search consistent with practices that are required and are in place at the police station and there appears to be no reason to think that he deviated in any way from the type of responsibilities he has [as] a police officer checking someone into the police headquarters and having someone in a detention type facility.

This appeal followed.

On appeal, defendant raises the following points for our consideration:

POINT I

SUPPRESSION IS REQUIRED BECAUSE THE STATE FAILED TO PROVE THAT THE PLAIN-VIEW EXCEPTION JUSTIFIED OFFICER [DZURKOC'S] SEIZURE AND SEARCH OF THE CIGARETTE BOX.

POINT II

EVIDENCE SEIZED FROM [DEFENDANT'S] PERSON MUST BE SUPPRESSED BECAUSE THE STATE FAILED TO PROVE THAT THE STATIONHOUSE SEARCH WAS A PROPER INVENTORY SEARCH.

We review a motion judge's factual findings in a suppression hearing with great deference. State v. Gonzales, 227 N.J. 77, 101 (2016). In our review of a "grant or denial of a motion to suppress[,] [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424

6

(2014). We defer "to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts. Our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

Applying that standard of review, we discern substantial credible evidence in the record to support the judge's findings of fact and we agree with the judge's application of those facts to the law. We conclude that the State's proofs established the applicable exceptions to the warrant requirement by a preponderance of the evidence. Defendant argues that the motion judge erred in sustaining the warrantless search "of the cigarette box under the plain view doctrine" because the State failed to meet the "inadvertence" and "immediately apparent" conditions. We disagree.

"A police officer may seize evidence in plain view without a warrant if the officer is 'lawfully . . . in the viewing area' when he discovers the evidence, and it is immediately apparent the object viewed is 'evidence of a crime, contraband, or otherwise subject to seizure.'" State v. Keaton, 222 N.J. 438, 448

7

(2015) (quoting State v. Johnson, 171 N.J. 192, 206-07 (2002)). Additionally, "[t]he officer must discover the evidence 'inadvertently,' 'meaning that he did not know in advance where evidence was located nor intend beforehand to seize it.'" Johnson, 171 N.J. at 206 (quoting State v. Bruzzese, 94 N.J. 210, 236 (1983)). So long as these three elements are satisfied, a police officer may seize the evidence without a warrant.[1] State v. Mann, 203 N.J. 328, 341 (2010).

"The purpose of the inadvertence requirement" was "to prevent the police from engaging in planned warrantless searches where they know in advance the location of certain evidence and intend to seize it, relying on the 'plain view' exception as a pretext." State v. Padilla, 321 N.J. Super. 96, 109 (App. Div. 1999), aff'd o.b., 163 N.J. 3 (2000). Here, because Dzurkoc could not have reasonably predicted and did not possess advance knowledge that drug packaging would be revealed in the cigarette box in plain sight, the inadvertence prong was satisfied. "[A] police officer lawfully in the viewing area [is not required to] close [her] eyes to suspicious evidence in plain view." Bruzzese,

---

[1]  In State v. Gonzales, 227 N.J. at 99, the Supreme Court "reject[ed] the inadvertence prong of the plain-view doctrine because it requires an inquiry into a police officer's motives and therefore is at odds with the standard of objective reasonableness that governs [the Court's] analysis of a police officer's conduct . . . ." But because the new standard only applies "prospectively[,]" id. at 101, and the search in this case occurred before the Gonzales decision, we assess the lawfulness of the seizure pursuant to the pre-existing three-prong standard.

94 N.J. at 237.  See Gonzales, 227 N.J. at 103 (recognizing that the then applicable inadvertence prong was satisfied when the officer discovered heroin spilling from bags when he approached the vehicle, despite having suspected the car occupants of engaging in narcotics activity).

The "immediately apparent" prong requires the court to determine whether probable cause existed to associate the item in plain view with criminal activity before opening it.  Johnson, 171 N.J. at 213.  "[W]hen 'determining whether the officer has probable cause to associate the item with criminal activity, the court looks to what the police officer reasonably knew at the time' . . . ."  Ibid. (quoting Bruzzese, 94 N.J. at 237).  In Johnson, our Supreme Court held that officers who saw a clear plastic bag could seize it under the plain view doctrine, even if they could not see its contents, if the surrounding circumstances gave them probable cause to believe it contained illegal drugs.  171 N.J. at 199-219.  Here, Dzurkoc, who had extensive experience in narcotics investigations, immediately suspected the cigarette box contained narcotics based on the blue tint.  See State v. Cope, 224 N.J. 530, 550 (2016) (discussing the third prong and noting that the "criminal nature of [the] container [was] immediately apparent where [the] officer '[b]ecause of his previous experience in arrests for drug offenses, . . . was aware that narcotics frequently were packaged in [similar] balloons'" (quoting

Texas v. Brown, 460 U.S. 730, 734 (1983))). "[I]n light of [her] experience and the facts known to [her]," Dzurkoc had probable cause to associate the blue tint with criminal activity. Johnson, 171 N.J. at 215.

Defendant also argues that the stationhouse search was not a valid "inventory search" because it was not "conducted according to 'standard departmental procedure.'" We reject this argument as contrary to the judge's factual findings, and deem it without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(2). Suffice it to say that "[a]n inventory search of personal effects of an arrestee at a police station is permissible under the Fourth Amendment." State v. Paturzzio, 292 N.J. Super. 542, 550 (App. Div. 1996). "A range of governmental interests supports an inventory process," including deterring arrestees' false claims of loss or stolen items, inhibiting "theft or careless handling" of arrestees' possessions, reducing the risk of injury to arrestees from items on their persons, and removing "[d]angerous instrumentalities—such as razor blades, bombs, or weapons . . . ." Illinois v. Lafayette, 462 U.S. 640, 646 (1983).

Here, the judge credited Santiago's testimony that the search was conducted according to "standard departmental procedure." State v. Mangold, 82 N.J. 575, 585 (1980). That finding was based on credible evidence in the

10

record and no countervailing facts in this record suggest that the police used an inventory search as "a subterfuge for a warrantless investigatory search." Ibid. Undoubtedly, "the police have the authority to ensure, at headquarters, that a person under arrest is not armed with a weapon." State v. Gibson, 218 N.J. 277, 299 (2014).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4695-16T3