724 A.2d 285

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
THOMAS KAZANES, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 4, 1999—Decided February 19, 1999.

---

Thus, we have no need to consider whether suppression of evidence would be required if the police made a no-knock entry without a showing of circumstances justifying this form of entry and made no effort to determine whether the residence was occupied, but it turned out by chance to be unoccupied. *Cf. State v. Johnson,* 118 *N.J.* 639, 653, 573 *A.*2d 909 (1990) (holding that one factor in the determination of whether evidence is the "fruit" of illegal police conduct is "the flagrancy and purpose of the police misconduct") (citing *Brown v. Illinois,* 422 *U.S.* 590, 603–04, 95 *S.Ct.* 2254, 2261–62, 45 *L. Ed.*2d 416, 427 (1975)).

422

Before Judges D'ANNUNZIO, CUFF and COLLESTER.

*Cafiero & Balliette and Balliette,* attorneys for appellant (*Andrea C. Balliette,* on the brief).

*Stephen D. Moore,* Cape May County Prosecutor, attorney for respondent (*Kathy Balin,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Defendant appeals from a Law Division judgment, entered after a trial *de novo* on the record, convicting him of the disorderly persons offenses of "wandering" with the purpose of unlawfully obtaining or distributing a controlled dangerous substance, in violation of *N.J.S.A.* 2C:33–2.1, and resisting arrest, in violation of *N.J.S.A.* 2C:29–2a. The court sentenced defendant to a fine of $250 for resisting arrest and a fine of $200 on the wandering charge.

On appeal, defendant contends that the evidence was insufficient to prove the violations beyond a reasonable doubt and that he received inadequate representation "at all levels of his prosecution." We conclude that the evidence was sufficient to support the resisting arrest conviction, but that it was not sufficient to establish a violation of the wandering statute. Defendant's contention that he was ineffectively represented is without merit. *R.* 2:11–3(e)(2).

The only witness to testify in the Municipal Court was the arresting officer, Elias Aboud. Officer Aboud was a thirteen-year veteran of the City of Wildwood Police Department. On August 26, 1996, at around 6:00 p.m., he was on West Wildwood Avenue when he observed defendant "on a bicycle and he was talking to another subject on a bicycle who is a known drug dealer." Officer Aboud observed defendant and his companion make "some type of hand to hand exchange." Based on his training and experience, Officer Aboud concluded that he had witnessed a drug transaction. After the hand to hand exchange, defendant and the alleged drug

dealer left the scene, going in separate directions. Aboud called for a back-up officer to stop the dealer, and Aboud stopped defendant.

As he approached defendant, Aboud observed that defendant had a blue plastic baggie in his hand which he placed in his mouth, chewed and swallowed. Aboud testified that he "could see the white residue in his mouth because he was biting the baggie, trying to chew the bag to swallow the CDS." Aboud stated that he grabbed defendant about the neck in an attempt to prevent him from swallowing the evidence. Defendant became belligerent and Aboud informed him that he was under arrest. As Aboud prepared to place handcuffs on defendant, defendant began to swing his arms and refused to allow Aboud to handcuff him. Aboud and defendant went to the ground where he continued to swing his arms and tried to kick Aboud. Aboud subdued defendant with the assistance of a back-up officer.

Defendant offered no testimony or other evidence.

The applicable statute provides:

2C:33–2.1  Loitering for purpose of illegally using, possessing or selling controlled substance

a.  As used in this section:

"Public place" means any place to which the public has access, including but not limited to a public street, road, thoroughfare, sidewalk, bridge, alley, plaza, park, recreation or shopping area, public transportation facility, vehicle used for public transportation, parking lot, public library or any other public building, structure or area.

b.  A person, whether on foot or in a motor vehicle, commits a disorderly persons offense if (1) he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance or controlled substance analog; and (2) engages in conduct that, under the circumstances, manifests a purpose to obtain or distribute a controlled dangerous substance or controlled substance analog.

c.  Conduct that may, where warranted under the circumstances, be deemed adequate to manifest a purpose to obtain or distribute a controlled dangerous substance or controlled substance analog includes, but not limited to, conduct such as the following:

(1) Repeatedly beckoning to or stopping pedestrians or motorists in a public place;

(2) Repeatedly passing objects to or receiving objects from pedestrians or motorists in a public place;

(3) Repeatedly circling in a public place in a motor vehicle and on one or more occasions passing any object to or receiving any object from a person in a public place.

d. The element of the offense described in paragraph (1) of subsection b. of this section may not be established solely by proof that the actor engaged in the conduct that is used to satisfy the element described in paragraph (2) of subsection b. of this section.

We are persuaded that the evidence is sufficient to establish the element contained in subparagraph b(2). Aboud's observations of the exchange and of the blue baggie and white residue in defendant's mouth supported a conclusion beyond a reasonable doubt that defendant was engaging in conduct manifesting a purpose to obtain a controlled dangerous substance.

The difficulty is with regard to the element of wandering, subparagraph b(1). Resolution of this case does not require us to establish all the boundaries of the wandering element. It is apparent, however, that the statute was enacted to protect the quality of life in public places by interdicting persons who linger or circulate there for the specific purpose of engaging in drug transactions.[1]

The verb "wander" has several definitions. *Webster's New International Dictionary*, defines it:

1. To move about without a fixed course, aim, or objective; to go hither and thither in idleness or restlessness; to rove at pleasure or without control; to ramble; as, tribes that wander continuously; to allow one's thoughts to wander; his fingers wandered idly over the keys.

2. To proceed or travel by a devious or indirect route; to take a winding, roundabout, or leisurely, course; to meander; stroll; saunter; as, cattle wandering homeward; a stream wanders through the valley; the letter wandered about for months.

---

[1] In a statement returning the original bill to the Legislature for amendment, Governor Florio described the evil the bill was intended to attack. He said:

In too many neighborhoods in New Jersey, drug dealers and drug buyers have transformed street corners into open-air drug markets. Meanwhile, residents and legitimate merchants see their neighborhoods filled with the decay and violence that inevitably accompany the drug trade.

3. To deviate, as from a path, course, etc.; to stray; depart; specif., to go astray morally; to err; as, to wander from a trail, a subject, or a purpose; *his eyes never wandered.*

O, let me not wander from thy commandments. Ps. cxix. 10.

4. To be or become irrational or delirious; to rave; as, *the patient is wandering; the old man wanders a little.*

5. To circulate; to pass from one person to another;—of a rumor or the like.[2]

. . .

[*Webster's New International Dictionary* 2870 (2nd ed.1934)]

Courts are required "to construe penal statutes strictly and to construe ambiguous language against the State." *State v. Galloway,* 133 *N.J.* 631, 658–59, 628 *A.*2d 735 (1993). Without fastening on one of these definitions, we are persuaded that the wandering element of section b(1), as well as the other verbs, to remain, to prowl, require more than the mere going from point A to point B, engaging in a drug transaction and leaving. The statute requires some sense of hanging about or lingering in an attempt to make a drug connection.

■ The evidence in this case did not satisfy the b(1) element. Aboud testified that he saw defendant on a bicycle, speaking with a known drug dealer, who was also on a bicycle. He further testified that he then observed a hand to hand exchange, which he believed to be a drug transaction. That is the extent of the evidence regarding the b(1) element of the statute. All it established was that there was a meeting and an exchange. There is no testimony from Aboud regarding defendant's movements before the meeting with the drug dealer. There is no evidence that Aboud had observed defendant in the neighborhood prior to the meeting with the drug dealer. There is no evidence regarding the length of time Aboud had observed defendant prior to the exchange. We do not know whether defendant and the "dealer"

---

[2] The same dictionary defines the verb loiter as "to be slow in moving; delay; linger; saunter; lag behind; to wander as an idle vagrant." *See also People v. Weger,* 251 *Cal.App.*2d 584, 59 *Cal.Rptr.* 661, 666 (Ct.App.1967).

were in movement on their bicycles when they met and effected an exchange.

The conviction for wandering under *N.J.S.A.* 2C:33–2.1 and the fine imposed are vacated. In all other respects, the judgment of conviction is affirmed.