NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2047-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MELVIN R. DOUGLAS,
A/K/A MELVIN DENNIS,
MELVIN DOUGLAS,
FUQUQN HALL,

 Defendant-Appellant.
_______________________________

 Submitted May 10, 2017 - Decided July 18, 2017

 Before Judges Lihotz and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Indictment No.
 14-04-1146.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Alyssa Aiello, Assistant Deputy
 Public Defender, of counsel and on the
 briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Sarah C. Hunt, Deputy
 Attorney General, of counsel and on the
 brief).

PER CURIAM
 Defendant Melvin R. Douglas appeals from a November 2, 2015

conviction, entered following his guilty plea to fourth-degree

possession of a controlled dangerous substance (CDS), marijuana,

with intent to distribute, N.J.S.A. 2C:35-5(a)(1), and third-

degree distribution of a CDS within 1000 feet of school property,

N.J.S.A. 2C:35-7. The trial judge sentenced defendant to five

years in state prison, with a two-year period of parole

ineligibility.

 On appeal, defendant argues the judge erroneously denied his

motion to suppress drug evidence discovered following an illegal

arrest. More specifically, defendant asserts:

 POINT I

 [DEFENDANT'S] ARREST FOR LOITERING IN
 VIOLATION OF N.J.S.A. 2C:33-2.1 WAS INVALID
 BECAUSE THAT STATUTE IS UNCONSTITUTIONAL.
 BECAUSE THE INVALID ARREST RENDERS THE SEARCH
 INCIDENT THERETO CONSTITUTIONALLY DEFECTIVE,
 THE MARIJUANA SEIZED FROM [DEFENDANT'S] PERSON
 SHOULD HAVE BEEN SUPPRESSED (Not raised
 below).

 A. New Jersey's Drug-Loitering Statute is
 Unconstitutionally Vague and Overbroad.

 B. New Jersey's Drug-Loitering Statute
 Violates the Fourth Amendment Because it
 Allows Police to Arrest an Individual on
 Less Than Probable Cause.

 C. [Defendant's] Invalid Arrest, Made
 Pursuant to an Unconstitutional Statute,
 Renders the Subsequent Search of his
 Person Constitutionally Defective.

 2 A-2047-15T1
 POINT II

 THE POLICE DID NOT HAVE PROBABLE CAUSE TO
 BELIEVE THAT [DEFENDANT] COMMITTED A VIOLATION
 OF N.J.S.A. 2C:33-2.1. THEREFORE, THE
 MARIJUANA FOUND ON [DEFENDANT'S] PERSON WAS
 THE PRODUCT OF AN UNLAWFUL ARREST AND MUST BE
 SUPPRESSED.

 POINT III

 OFFICER RAMIREZ ABUSED HIS DISCRETION BY
 SUBJECTING [DEFENDANT] TO A FULL CUSTODIAL
 ARREST FOR COMMITTING A DISORDERLY PERSONS
 OFFENSE.

We reject these arguments and affirm.

 These facts were presented during the suppression hearing,

to support defendant's December 24, 2013 arrest. The State

presented testimony from the arresting officer, Hector Ramirez,

and Officer Robert Fesi, of the Camden County Police Department,

who monitored a series of live feed surveillance video streams,

while stationed at the Real Time Tactical Operations and

Information Center (Tactical Information Center).

 At approximately 1 p.m., Officer Fesi turned a strategically

placed "Eye in the Sky" camera toward the intersection of Filmore

and Viola Streets, known as a "narcotics distribution area[]." He

confirmed the cameras were working properly. Officer Fesi

monitored the activity of defendant and another individual, later

identified as Keith Council, in real time. Over the course of an

 3 A-2047-15T1
hour, Officer Fesi watched the two men, whom he believed, based

upon his training and experience, engaged in seven to eight "street

level narcotics distribution[s]." More specifically, Officer Fesi

testified:

 [V]ehicles would pull over to the side of the
 road. One male would approach the vehicle,
 have a short transaction, conversation with
 the vehicle. The vehicle would pull off.
 After numerous times — about seven or eight
 times I saw this, this was consistent with CDS
 transaction[s].

 . . . .

 The vehicle would pull up -- somebody would
 waive [sic] the vehicle over, they would pull
 up, he would walk up to the driver's side of
 the vehicle, an interaction would take place,
 and then the vehicle would drive off.

 Officer Fesi stated the activity he observed was consistent

with street drug sales. He radioed command, who dispatched Officer

Ramirez and his partner Jay Rivera, to the area. Officer Ramirez

established radio contact with Officer Fesi, who related a

description of the two men, based on their clothing. Officers

Ramirez and Rivera arrived on the scene; Officer Ramirez stopped

defendant and Officer Rivera stopped Council. Officer Fesi watched

the events as they occurred. Officer Ramirez relayed a physical

description of defendant and Council to Officer Fesi, and Officer

Fesi confirmed defendant and Council were the individuals he

 4 A-2047-15T1
observed engaging in the transactions. Officer Ramirez placed

defendant and Council under arrest.

 On cross-examination, the defense challenged the limited

training and experience of Officer Fesi, who worked for the

Tactical Information Center for one-year prior to defendant's

arrest. Officer Fesi confirmed he could not identify the suspects'

faces because of the video quality, and based his identification

only on their clothing.

 During the hearing, Officer Fesi was asked to narrate events

shown on the video taken from the Eye in the Sky camera. He

stated: "the white truck pulled up, stopped, . . . one of the

males went up to the window, and then the male ran away, returned

with something, and the truck drove off." When the red car drove

up he observed "the exact same thing."

 Officer Fesi could not state which of the two men shown on

the video was defendant. Additionally, he admitted, he never saw

an actual exchange of money for an object between the vehicle's

occupants and defendant, because a tree blocked the camera's view.

 After the defense played the first fifteen-minute segment of

the un-redacted one-hour video recording, the State objected.

After a lengthy colloquy, the defense declined to continue showing

the video. In the course of redirect, based on the State's

question, this colloquy occurred:

 5 A-2047-15T1
 THE COURT: What actions did you actually
 observe individuals engaging in that you
 concluded were drug transactions? What did
 you actually see?

 [OFFICER FESI]: What I actually saw?

 THE COURT: Based on the tree, and the
 arguments of counsel, I want to know exactly
 what you physically saw with respect to the
 actions.

 [OFFICER FESI]: What I saw was a man standing
 on the corner, vehicle pull up, the man engage
 in short conversation with the vehicle, and
 then walk away and the vehicle drove away
 numerous times, and based on my training and
 experience we look at the totality of the
 circumstances, and that is street level
 narcotics distribution in a designated high
 CDS area.

 THE COURT: All right. Did you . . . see the
 individual who walked up to the vehicle have
 anything in that individual's hand?

 [OFFICER FESI]: No, not from the video, I
 couldn't see --

 THE COURT: Did you see anything exchanged by
 either?

 [OFFICER FESI]: No.

 Next, Officer Ramirez testified. He acknowledged he received

clothing descriptions of two suspects from Officer Fesi and was

directed to their location. When Officer Fesi confirmed Officer

Ramirez had stopped the suspect he observed, Officer Ramirez placed

defendant under arrest and patted him down. Officer Rivera was

directed to, and arrested Council. On cross-examination, Officer

 6 A-2047-15T1
Ramirez stated, based on the information provided by Officer Fesi,

he initially arrested defendant for loitering to commit a drug

offense.

 During processing at the police station, defendant removed

his jacket and a package of marijuana fell from his sleeve.

Officer Ramirez recovered "15-20" bags of marijuana.

Consequently, the charges to which defendant pled were issued.

 In an oral opinion, rendered on January 28, 2015, the judge

concluded Officer Ramirez had probable cause to arrest defendant

based upon the observations Officer Fesi communicated directly to

him. A reasonable belief defendant was engaged in criminal

activity was supported by the testimony of Officers Fesi and

Ramirez, which was found credible. The officers related their

respective personal knowledge, training and experience in drug

distribution activity, and each separately characterized the

specific area of defendant's arrest as an area known for street

drug sales.

 Although Officer Fesi could not identify facial features, see

the exact exchange or hear conversation between defendant,

Council, and the drivers, he saw seven or eight vehicles stop in

the area where defendant and Council stood. He also explained the

same repeated pattern of activity: one of the two men went to the

driver's side window, ran away then returned to the driver's side

 7 A-2047-15T1
window with an object, then the vehicle drove away. Officer Fesi

saw this happen "exactly the same" way, over the course of the

hour, which led him to conclude defendant was engaged in drug

distribution. The portion of the video played during Officer

Fesi's testimony corroborated his stated observations.

 The clothing description of the suspects, as provided by

Officer Fesi, enabled Officer Ramirez to spot defendant and place

him under arrest. Officer Fesi verified the man in custody was

the man he observed engaged in the suspected drug activity. After

reviewing the elements of the charged offenses, the judge concluded

Officer Fesi's observations provided a well-grounded suspicion

defendant was engaged in the charged drug distribution offenses.

 For the first time on appeal, defendant challenges the

constitutionality of N.J.S.A. 2C:33-2.1, which criminalizes

loitering for the purpose of distributing drugs, the basis upon

which defendant was arrested.1 Defendant argues because the

1
 This court has noted:

 Interestingly, the word "loitering" is
 contained only in the statute's title as
 appearing in New Jersey Statutes Annotated –
 "Loitering for purpose of illegally using,
 possessing or selling controlled substance" —
 and appears nowhere in the actual text of the
 statute, which prohibits, when coupled with
 other conduct, the "wander[ing], remain[ing]

 8 A-2047-15T1
statute is overbroad his arrest was invalid. Recognizing he failed

to raise the issue before the trial judge, defendant maintains

freedom from constitutionally defective arrests is a matter of

great public concern, which affects fundamental due process

rights. See Spiegle v. Seaman, 160 N.J. Super. 471, 481 (App.

Div. 1978) (finding it "necessary to determine propositions not

raised below in order to protect the fundamental rights of a

party").

 "Generally, an appellate court will not consider issues, even

constitutional ones, which were not raised below." State v.

Galicia, 210 N.J. 364, 383 (2012); see also State v. Walker, 385

N.J. Super. 388, 410 (App. Div.), certif. denied, 187 N.J. 83

(2006). Two well-established exceptions to the overarching rule

allow review of issues regarding challenges to the court's

jurisdiction, and to "matters of great public interest." State

v. Robinson, 200 N.J. 1, 20 (2009) (citing Nieder v. Royal Indem.

Ins. Co., 62 N.J. 229, 234 (1973)). We nonetheless conclude the

statute passes constitutional scrutiny.

 or prowl[ing]" in a public place. N.J.S.A.
 2C:33-2.1(b)(1).

 [State v. Gibson, 425 N.J. Super. 523, 529 n.4
 (App. Div. 2012), rev'd on other grounds, 218
 N.J. 277 (2014).]

 9 A-2047-15T1
 General loitering statutes have successfully been challenged

as overbroad. When the prohibited conduct is vague, such statutes

will not withstand due process scrutiny. See Giaccio v.

Pennsylvania, 382 U.S. 399, 402-03, 86 S. Ct. 518, 520, 15 L. Ed.

2d 447 (1966) ("It is established that a law fails to meet the

requirements of the Due Process Clause if it is so vague and

standardless that it leaves the public uncertain as to the conduct

it prohibits . . . ."). The United State Supreme Court recognized

 the freedom to loiter for innocent purposes
 is part of the "liberty" protected by the Due
 Process Clause of the Fourteenth Amendment.
 We have expressly identified this "right to
 remove from one place to another according to
 inclination" as "an attribute of personal
 liberty" protected by the Constitution.
 Williams v. Fears, 179 U.S. 270, 274, 21 S.
 Ct. 128, 45 L. Ed. 186 (1900); see also
 Papachristou v. Jacksonville, 405 U.S. 156,
 164, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972).
 Indeed, it is apparent that an individual's
 decision to remain in a public place of his
 choice is as much a part of his liberty as the
 freedom of movement inside frontiers that is
 "a part of our heritage," Kent v. Dulles, 357
 U.S. 116, 126, 78 S. Ct. 1113, 2 L. Ed. 2d
 1204 (1958), or the right to move "to
 whatsoever place one's own inclination may
 direct" identified in Blackstone's
 Commentaries. 1 W. Blackstone, Commentaries
 on the Laws of England 130 (1765).

 [City of Chi. v. Morales, 527 U.S. 41, 53-54,
 119 S. Ct. 1849, 1857-58, 144 L. Ed. 2d 67,
 78-79 (1999) (footnotes omitted).]

 10 A-2047-15T1
 New Jersey has no general anti-loitering laws. See State v.

Crawley, 90 N.J. 241, 247 (1982) ("In view of this legislative

history, we conclude that the absence of a loitering proscription

from the Code reflects a state policy to decriminalize such

activity.").

 Applying these standards, we examine the challenged criminal

statute to determine whether the prohibited conduct is

sufficiently described. See State v. Galloway, 133 N.J. 631, 658-

59 (1993) (holding courts must "construe penal statutes

strictly"). Defendant's arrest was based on N.J.S.A. 2C:33-

2.1(b), which provides:

 [a] person . . . commits a disorderly persons
 offense if (1) he wanders, remains or prowls
 in a public place with the purpose of
 unlawfully . . . distributing a controlled
 dangerous substance . . . ; and (2) engages
 in conduct that, under the circumstances,
 manifests a purpose to . . . distribute a
 controlled dangerous substance.

 Subsection (c) lists "[c]onduct that may, where warranted

under the circumstances, be deemed adequate to manifest a purpose

to obtain or distribute a controlled dangerous substance or

controlled substance analog" to include, but is not limited to:

 (1) Repeatedly beckoning to or stopping
 pedestrians or motorists in a public place;

 (2) Repeatedly passing objects to or
 receiving objects from pedestrians or
 motorists in a public place;

 11 A-2047-15T1
 (3) Repeatedly circling in a public
 place in a motor vehicle and on one or more
 occasions passing any object to or receiving
 any object from a person in a public place.

Subsection (d) of the statute further instructs the activity used

to satisfy element (1) may not be used to satisfy element (2).

N.J.S.A. 2C:33-2.1(d). Therefore, the State must prove a defendant

(a) was wandering, remaining, or prowling (b) in a public place,

(c) with the purpose of unlawfully distributing CDS, and (d)

engaged in activities tending to manifest the purpose to unlawfully

distribute CDS. Ibid.

 On its face, N.J.S.A. 2C:33-2.1 is not directed to general

loitering. "It is apparent . . . the statute was enacted to

protect the quality of life in public places by interdicting

persons who linger or circulate there for the specific purpose of

engaging in drug transactions." State v. Kazanes, 318 N.J. Super.

421, 425 (App. Div. 1999). "In too many neighborhoods in New

Jersey, drug dealers and drug buyers have transformed street

corners into open-air drug markets. Meanwhile, residents and

legitimate merchants see their neighborhoods filled with the decay

and violence that inevitably accompany the drug trade." Id. at

425 n.1 (quoting Governor Florio's statement to Legislature

regarding P.L. 1991, c. 383).

 12 A-2047-15T1
 The Supreme Court has made clear the standards governing

arrest for the criminal conduct described therein.

 The right to walk freely on the streets of a
 city without fear of arbitrary arrest is one
 of the guarantees protected by the Fourth
 Amendment of the United States Constitution
 and Article I, Paragraph 7 of the New Jersey
 Constitution. A person cannot be arrested
 unless there is probable cause to believe that
 he has committed or is committing an offense.
 An arrest without probable cause is an
 unreasonable seizure in violation of both the
 Federal and State Constitutions.

 [State v. Gibson, 218 N.J. 277, 281 (2014).]

The non-exhaustive examples of behavior that may be consistent

with someone attempting to buy drugs includes some form of contact

with other people or motorists, including passing objects or

beckoning to pedestrians. The identified conduct is specific and

cannot be described as "mere loitering."2 Unlike general statutory

prohibitions, N.J.S.A. 2C:33-2.1 defines conduct with a purpose

and intent not simply hanging around in a place for no apparent

reason. Accordingly, a police officer cannot arrest an individual

unless that individual's behavior is corroborative of some illegal

activity.

2
 "As commonly understood, loitering suggests remaining or
lingering in a location for some indefinite period for no apparent
purpose." Gibson, supra, 218 N.J. at 289-90 (citing various
dictionary definitions of the word "loiter").

 13 A-2047-15T1
 We reject defendant's vagueness challenges. We conclude the

statute sufficiently provides standards that inform the public of

the nature of prohibited conduct.3 Despite defendant's arguments

to the contrary, our review of the record of the suppression

hearing satisfies us the State proved not only reasonable

suspicion, but also probable cause to stop and arrest defendant

for violating N.J.S.A. 2C:33-2.1.

 Generally, probable cause "means less than legal evidence

necessary to convict though more than mere naked suspicion." State

v. Daniels, 393 N.J. Super. 476, 486 (App. Div. 2007) (quoting

State v. Mark, 46 N.J. 262, 271 (1966)). "Probable cause has been

characterized 'as a common-sense, practical standard.'" Ibid.

(quoting State v. Novembrino, 105 N.J. 95, 120 (1987). "Probable

cause exists if at the time of the police action there is 'a well

grounded suspicion that a crime has been or is being committed.'"

Ibid. (quoting State v. Waltz, 61 N.J. 83, 87 (1972)). The

standard is objective and considers the totality of all facts and

3
 Recently, the New Jersey Supreme Court discussed N.J.S.A.
2C:33-2.1, without triggering constitutionality questions. See
State v. Miles, __ N.J. __ (2017) (vacating successive prosecutions
for loitering for the purpose of distributing drugs and then
distribution of drugs in a school-zone because the former included
the same elements of proof established by the same evidence, making
it the same offense, barred by double jeopardy). In Gibson, the
Court cited N.J.S.A. 2C:33-2.1 with approval as providing a
satisfactory description of conduct amounting to loitering.
Gibson, supra, 218 N.J. at 290.

 14 A-2047-15T1
circumstances. "Although several factors considered in isolation

may not be enough, cumulatively those pieces of information may

'become sufficient to demonstrate probable cause.'" Ibid.

(quoting State v. Zutic, 155 N.J. 103, 113 (1998)).

 Here, for an hour, police surveilled an area known for open-

air drug transactions. Defendant moved about the block, as he and

Council approached seven or eight motorists who pulled over.

Defendant or Council spoke to each driver, left briefly, then

returned to the stopped car with an object. After an interaction,

the driver pulled away. Although Officer Fesi acknowledged he

could not see an actual transfer of money for small objects because

of a tree blocking the camera view, the repeated conduct was

consistent with the examples of conduct deemed to manifest a

purpose to distribute drugs. While in a public place defendant

repeatedly met stopped motorists to whom he passed objects.

Officer Ramirez relied on Officer Fesi's information and clothing

description, see State v. Crawley, 187 N.J. 440, 457 (permitting

police to rely on information transmitted by one officer to

another), cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed.

2d 563 (2006), to arrest defendant.

 Considering all of the facts recited above, we conclude the

officers had "a 'well grounded' suspicion that a crime . . . [was]

being committed." Waltz, supra, 61 N.J. at 87. Consequently,

 15 A-2047-15T1
probable cause existed to arrest defendant for the disorderly

persons offense of wandering, in violation of N.J.S.A. 2C:33-2.1.

Daniels, supra, 393 N.J. Super. at 485.

 Next, the fact defendant was initially arrested for

wandering, in violation of N.J.S.A. 2C:33-2.1, is immaterial.

Subsequent discovery of twenty-one bags of marijuana in his jacket

sleeve, during the search incident to arrest, provided the basis

to charge him with fourth-degree intent to distribute, N.J.S.A.

2C:35-5(a)(1), and third-degree intent to distribute in a school

zone, N.J.S.A. 2C:35-7, the drug offenses to which he pled guilty.

The initial arrest on the lesser charge did not invalidate the

arrest or the final charges.

 Following review of defendant's remaining arguments, we

reject them as lacking merit. We reject, as invited error, the

claim regarding the judge's failure to view the entire one-hour

video. See State v. Simon, 79 N.J. 191, 205 (1979) (stating that

errors originating with a defendant generally cannot serve as a

basis for reversal on appeal). Defendant was given numerous

opportunities to present the video evidence in its entirety, and

specifically informed the judge it was not necessary.

 Affirmed.

 16 A-2047-15T1