**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0036-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARK K. WELCH, a/k/a
MOSES WELCH, MALEIK K.
WELCH, MELEIK K. WELCH,
MELEIK MOSES, and WELCH BEY,

     Defendant-Appellant.

_____

Submitted September 13, 2018 – Decided November 7, 2018

Before Judges Alvarez, Nugent, and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 13-03-0294 and 13-03-0295.

Hegge & Confusione, LLC, attorneys for appellant (Michael J. Confusione, of counsel and on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (N. Christine Mansour, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Mark K. Welch was convicted in consecutive trials of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2);[1] and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).[2] On August 5, 2016, the trial judge sentenced defendant to ten years in state prison with a five-year period of parole ineligibility on the unlawful possession conviction, a concurrent eighteen months imprisonment on the resisting arrest, and a consecutive term of eight years in state prison with a five-year period of parole ineligibility on the certain persons offense. We affirm the convictions but vacate the sentence and remand for a rehearing.

I.

The State's trial witnesses testified to the following facts. At around 9:30 p.m. on October 30, 2012, Linden Police Officers Eric Calleja, William Bizub, and Michael Burnette were on patrol. They were assigned to address potential

---

[1] Defendant was indicted for third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a)-(b), but the jury convicted him of the lesser fourth-degree crime.

[2] Defendant was also indicted for fourth-degree obstructing a criminal investigation, N.J.S.A. 2C:29-1. That count of the indictment was dismissed prior to trial.

post-Hurricane Sandy conduct, including curfew violations. Calleja testified that in the bright moonlight, aided by the patrol vehicle's headlights, he saw defendant about to step onto a sidewalk while holding a beer can in his right hand. Calleja got out of the vehicle, approached defendant with his flashlight on, and told him to stop. Defendant threw the beer can away and began to walk down a driveway from the sidewalk into the yard. After Calleja yelled "stop, police," defendant began to run. Calleja gave chase and eventually stopped defendant, followed by Bizub and Burnette. Calleja wrapped his arms around defendant, who struggled and repeatedly tried to reach into his front jacket pocket. Three men came into the yard while Calleja wrestled with defendant and yelled at the officers as well as defendant. Once defendant was handcuffed, Bizub began to yell, "gun." Calleja looked down and saw a handgun magazine on the ground. Burnette searched defendant while Calleja held him, and Calleja saw Burnette pull a 9mm Ruger out of the left side of defendant's jacket.

A childhood acquaintance and friend of defendant, Anthony Kinch, testified to the contrary. He said he placed a flare light in front of his home and was outside around 10:00 p.m. on the relevant date. An officer instructed Kinch and his companions to go inside because of the statewide curfew, and he complied. Since he had gone back in, Kinch did not see defendant again until

3

about ten minutes later, in a neighbor's back yard.  Kinch said he saw two officers follow defendant and tackle him to the ground.  The officers took defendant to three different spots in the back yard, and one of them picked up a handgun in an area about 200 feet from where defendant had been standing.

## II.

During the suppression hearing, only Calleja testified.  A Law Division judge denied the motion, finding Calleja a "completely credible[]" witness.  She held, applying Terry v. Ohio, 392 U.S. 1, 27 (1968), that the initial investigatory stop was lawful because the officers reasonably believed that defendant had violated the municipal ordinance prohibiting the consumption of alcohol in public places.  Under State v. Nishina, 175 N.J. 502, 512-14 (2003), police may lawfully approach a person to address a municipal ordinance violation.  Once the officer attempted to speak to defendant and he fled, the officer had a right to follow and detain him.  Once police saw the loaded magazine on the ground beneath defendant, they had the right to arrest, and to search incident to the arrest.

Defendant, who was released on bail prior to the trial, filed a pro se motion to dismiss the matter on speedy trial grounds the day before trial began.  In denying the motion, a different judge, who presided over the trial, stated:

A-0036-16T4

[w]e did jump some of your trial dates for people who were in jail. They receive preference because all this time you've been out on bail and they may have had an older case, but since they were in jail we leap frogged yours to take care of them, and that included a murder case, which I think was older, and then we also have to account for [defense counsel's] availability, the court's availability, and I haven't tried a case in a month only because we were instructed to get rid of a lot of old PCR cases, so I got rid of [twelve] cases in June.

## III.

### a.

Defendant made a <u>Rule</u> 3:18-2 motion for judgment of acquittal after the State rested. The trial judge denied the motion.

Prior to sentencing, the court conducted a hearing at which defendant's mother and her friend testified. They claimed they saw a juror turn to another and say words to the effect of "I told you so," or "see, I told you" before defendant was tried on the certain persons charge but after the jury convicted him of unlawful possession of a weapon. Based on their testimony, defendant contended that the jurors had information regarding his prior criminal history during the first trial.

The judge denied defendant's motion to interview the jurors regarding taint because "[n]either witness has any training in lip reading" while "both admitted that they did not hear what was uttered." Furthermore, despite the

A-0036-16T4

women testifying that they sat either in the second or third row, a courtroom video "showing a great portion of the courtroom [presents] neither lady . . . in the picture. They were, in fact, a greater distance from the jury box than the participants in the trial."

The court noted the mother

> testified that on the day of the verdict [they] came to court in separate cars. [The mother's friend] testified that they drove to court together. [The mother's friend] testified after [the mother]. [The mother] was in the courtroom while [the mother's friend] testified. When [the mother's friend] said they drove together the [c]ourt saw [the mother] shake her head, in effect, correcting [the mother's friend] who immediately changed her answer and said they drove in separate cars.

Finally, the judge said, even if the women were truthful in what they saw, "the context of the juror[']s words are ambiguous. . . . [T]here is no indication it related to defendant's prior conviction . . . or something totally unrelated." The court therefore denied defendant's motion for a new trial.

Before imposing sentence on defendant, the court reviewed the aggravating and mitigating factors, and was "convinced that [a]ggravating factors [three], [six], and [nine] substantially outweigh the nonexistent mitigating factors" under both indictments. The judge declined to merge the offenses, pursuant to State v. Lopez, 417 N.J. Super. 34 (App. Div. 2010). He

6

denied the State's application for extended term sentencing under the persistent offender statute, N.J.S.A. 2C:44-3; however, he sentenced defendant to consecutive terms:

> I recognize that it's one of those cases where there's a straight possession of a handgun that serves as the basis for the certain persons charge without any other crime being charged. I find that that consideration is outweighed by the need to deter convicted criminals from possessing guns, so that charge should run consecutive.

b.

Defendant raises the following points for our consideration:

> Point 1
> The trial court erred in denying defendant's motion to suppress.
>
> Point 2
> The trial court erred in denying defendant's motion to dismiss on speedy trial ground[s].
>
> Point 3
> The trial court erred in denying defendant's motion for acquittal of the unlawful possession and certain persons offenses.
>
> Point 4
> The trial court erred in denying defendant's motion for a new trial based on improper knowledge by two jurors of defendant's past crimes.
>
> Point 5
> Defendant's sentence is improper and excessive.

A-0036-16T4

IV.

It is well-established that "[a]ppellate courts reviewing a grant or denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). We defer "to those findings of the trial judge which are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Nor do we disturb the trial court's findings merely because we "might have reached a different conclusion . . . ." Ibid.

Under Point 1, defendant argues that the trial court "erred in denying defendant's motion to suppress, because the prosecution did not demonstrate that the police had probable cause to arrest the defendant, which was the State's burden to demonstrate." Relying upon State v. Gibson,[3] defendant then maintains that the State "failed to disprove that this was, instead, an incident of racial profiling[,] which is not grounds for a valid lawful stop and seizure."

---

[3] 218 N.J. 277, 296-97 (2014).

A-0036-16T4

Both the United States and New Jersey Constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Warrantless searches and seizures are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). The State carries the burden to prove that the warrantless conduct fell within a valid exception to the warrant requirement. State v. DeLuca, 168 N.J. 626, 632 (2001).

A stop based upon the belief that a municipal ordinance was violated is recognized as a valid stop. Nishina, 175 N.J. at 512-14. Those stopped by police, even if a court later determines that the stop was invalid, are not permitted to flee or to resist. State v. Crawley, 187 N.J. 440, 458 (2006). There is no "distinction between fleeing from an arrest and fleeing from an investigatory detention." Id. at 459.

Probable cause to arrest exists "if at the time of the police action there is a 'well grounded' suspicion that a crime has been or is being committed." State v. Johnson, 171 N.J. 192, 214 (2002) (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)). Probable cause existed in this case because defendant fled, having been seen violating the State curfew and the municipal ordinance, and after being ordered to stop.

A-0036-16T4

Defendant contends that Calleja's stop "was not a lawful stop because it was not credible that the police officer, in . . . darkness, could see the person with a beer can and identify the man walking as defendant." Defendant also maintains that "[e]ven if this was defendant, the evidence did not prove that defendant was on public property with the beer can; the proofs showed that defendant was on private property . . . ."

Defendant's challenge to the court's denial of the motion to suppress depends on his claim that Calleja was not credible. However, the court's finding that Calleja was credible is supported by the record and is entitled to deference. Between the moonlight and the vehicle headlights, it is credible that Calleja saw a man holding a silver beer can a few feet away in the darkness post-Sandy, in violation of the curfew. As the judge found, at the time Calleja attempted to detain defendant, he had more than a well-grounded suspicion that an offense had been committed. See Johnson, 171 N.J. at 214. Defendant's argument that he was drinking on private property also fails since in this case the judge found Calleja credible, and Calleja saw defendant crossing the street.

Defendant's reliance on State v. Gibson, 218 N.J. 277 (2014), lacks merit as well. In Gibson, a defendant was stopped only because he was observed trespassing, in the officer's opinion, on private property. Id. at 297-98. Here,

10

Calleja saw defendant violating curfew and holding an open container of alcohol while crossing a street. <u>Gibson</u> is therefore factually distinguishable from this situation. Gibson was not committing any offense while this defendant was violating a state curfew and a municipal ordinance, and fled when ordered to stop.

The attempted investigatory stop of defendant was supported by reasonable and articulable suspicion. The situation escalated once defendant fled. Seizure of the firearm was permissible as the fruit of a search incident to the ensuing lawful arrest. The trial judge's denial of the motion to suppress was proper.

V.

A defendant has a fundamental right to a speedy trial both under the United States and New Jersey Constitutions. <u>U.S. Const.</u> amend. VI; <u>N.J. Const.</u> art. 1, ¶ 10; <u>see also</u> <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 222-23 (1967); <u>see also</u> <u>State v. Szima</u>, 70 N.J. 196 (1976), <u>cert. denied</u>, 429 U.S. 896 (1976). In order to determine whether that fundamental right has been violated, four factors are considered as outlined in <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). <u>See also</u> <u>Szima</u>, 70 N.J. at 201. The trial judge applied the analysis in reaching his decision denying defendant's eleventh-hour motion to dismiss. For the

11

reasons he stated, the issue on appeal is so lacking in merit as to not warrant further discussion in a written opinion.  R. 2:11-3(e)(2).

VI.

We review motions for acquittal based on insufficient evidence pursuant to Rule 3:18-1, the same standard employed by trial courts.  State v. Bunch, 180 N.J. 534, 548-49 (2004); State v. Felsen, 383 N.J. Super. 154, 159 (App. Div. 2006).  Rule 3:18-1 provides, in relevant part, that

> [a]t the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction.

Thus, a motion for acquittal will not be granted where

> viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967) (citing State v. Fiorello, 36 N.J. 80, 90-91 (1961)).]

Defendant contends that the trial judge should have granted the motion for acquittal because of an asserted lack of proof of possession beyond a reasonable doubt.  However, Calleja and Bizub testified that the gun was taken from

12

defendant's jacket pocket. The parties stipulated he had no permit to possess it. When the State rested, the only trial testimony was that of the officers, who said they removed the gun from defendant's person. This is "[]sufficient to warrant a conviction." R. 3:18-1. No further discussion of the point is necessary. R. 2:11-3(e)(2).

## VII.

Defendant also contends that the motion for a new trial should have been granted in light of defendant's mother's testimony that two jurors mouthed words she construed to mean that they were aware of defendant's prior criminal history. The trial judge found the testimony incredible. For the reasons he stated, we affirm without further discussion. R. 2:11-3(e)(2).

## VIII.

Where a judge properly identifies and balances aggravating and mitigating factors, a sentence is subject to limited appellate review. State v. Cassady, 198 N.J. 165, 180 (2009) (quoting State v. O'Donnell, 117 N.J. 210, 215 (1989)). We do not second-guess a trial judge's finding of sufficient facts to support an aggravating or mitigating factor. O'Donnell, 117 N.J. at 216.

We do not substitute our judgment for that of a trial court. Cassady, 198 N.J. at 180 (quoting State v. Evers, 175 N.J. 355, 386 (2003)). If the sentencing

A-0036-16T4

court's findings of facts are grounded in competent, reasonably credible evidence, and the court has applied the correct legal principles in exercising its discretion, we will modify the sentence only if the application of the law to the facts is such a clear error of judgment that it shocks the judicial conscience. State v. Roth, 95 N.J. 334, 363-65 (1984).

Citing the principles set forth in State v. Yarbough, 100 N.J. 627 (1985), defendant contends that the trial court erred in imposing the maximum ten-year sentence for an unlawful possession crime, and a consecutive high-end sentence for the certain persons offense. In sentencing defendant consecutively, the judge also relied upon the Yarbough factors.

There is no question that the trial court did not err in denying merger. See State v. Wright, 155 N.J. Super. 549, 553 (App. Div. 1978). Courts have repeatedly opined that the Legislature did not intend for the crimes to merge where a defendant is charged with a weapons possession offense and a certain persons offense. State v. Lopez, 417 N.J. Super. 34, 37 n.2 (App. Div. 2010) (citing Wright, 155 N.J. Super. at 553-55).

In this case, it is not so clear the questions of the length of the terms of imprisonment, and whether they should be imposed consecutively or concurrently, were fully analyzed. The judge sentenced defendant to ten years

imprisonment with a five-year term of parole ineligibility on the unlawful possession offense, relying on aggravating factors three, six, and nine. N.J.S.A. 2C:44-1(a)(3), (6), and (9). That is the maximum term for the offense. Relying on those same factors, he sentenced defendant towards the top of the range on the certain persons offense, to eight years with five years of parole ineligibility. At the time of the sentence, defendant was thirty-three years old, and had two prior indictable convictions.

Clearly, the two offenses with which defendant was charged arose from the same unlawful episode—defendant's act of being in possession of a firearm. The two offenses also arose from the same act—possession of the firearm.

In State v. Miller, 108 N.J. 112, 121 (1987), the Court reiterated the fundamental principle that in imposing consecutive sentences, judges must be guided by the general purposes of New Jersey's Criminal Code. That means "punishment in proportion to the offense and . . . a predictable degree of uniformity." Ibid. (quoting Yarbough, 100 N.J. at 636-37).

The Miller Court said that in providing a statement of reasons, the trial judge must take into account "that the factors invoked by the Legislature to establish the degree of the crime should not be double counted when calculating the length of the sentence." Id. at 122. Additionally, the "factors relied on to

sentence a defendant to the maximum term for each offense should not be used again to justify imposing those sentences consecutively." Ibid.

Furthermore,

> [w]here the offenses are closely related, it would ordinarily be inappropriate to sentence a defendant to the maximum term for each offense, and also require that those sentences be served consecutively, especially where the second offense did not pose an additional risk to the victim. The focus should be on the fairness of the overall sentence . . . .
>
> [Ibid.]

The judge accorded great weight to the gravity of the crime, aggravating factor nine. His primary concern was that if the sentences were to be served on a concurrent basis, defendant's act of possession, and of possession while a certain person, would effectively become one and the same crime and any distinction between the two would be meaningless.

But the Legislature has already taken the gravity of the crime into account, by making both second-degree offenses and imposing a five-year parole bar on the certain persons charge.[4] Here, the two crimes result from only one act of

---

[4] At the sentencing hearing, the prosecutor mentioned that defendant was subject to a Graves Act sentence pursuant to N.J.S.A. 2C:43-6(c). The issue was not further addressed.

possession. Thus to impose consecutive sentences, both at the top or near the top of the range, would seem to violate the principles enunciated in <u>Miller</u>. <u>Miller</u>, although certainly not recent authority, expresses black letter principles of law never rejected by the court, and from which sentencing law has evolved. The imposition of an aggregate eighteen years with a ten-year parole bar is a substantial sentence for this defendant. After all, here the authorities discovered the gun only because he attempted to flee arrest while violating curfew and drinking in public.[5] As we said in <u>State v. Lopez</u>, 417 N.J. Super. at 37 n.2, "there is no statutory mandate that the court impose a consecutive sentence for a certain persons conviction."

Without comment as to the appropriate term imposed after a remand, we remand for a new sentence hearing. The statement of reasons should not rely on

_____

[5] A cursory search reveals less draconian sentences for more serious crimes: <u>see</u> <u>State v. Jones</u>, 232 N.J. 308 (2018) (fifteen years with an eighty-five percent parole bar for armed robbery with a concurrent term of seven years with a five-year parole bar for the certain persons offense pursuant to a plea agreement); <u>State v. Williams</u>, 218 N.J. 576, 582 (2014) (fourteen years with an eighty-five percent parole bar for armed robbery after a jury trial); <u>Lopez</u>, 417 N.J. Super. at 37 (three years imprisonment for unlawful possession of a weapon, plus a consecutive term of five years with a five-year parole bar for the certain persons offense after a trial).

the same factors to set sentences at the maximum while also imposing consecutive sentences for the same reasons.  Otherwise, affirmed.

Affirmed in part; reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0036-16T4